## UNITED STATES *v.* BRAUN.

## SAME *v.* SOHN.

*(District Court, E. D. Missouri, E. D.* September 2, 1889.)

TRADE-MARK—COUNTERFEITING—INDICTMENT.

A certificate of registration of a trade-mark is merely *prima facie* evidence that the applicant is the owner of a valid trade-mark; and indictments, under act Cong. Aug. 14, 1876, § 1, to punish counterfeiting of registered trade-marks, which allege that a certain word has been admitted to registration as a trade-mark, without averring facts showing that the alleged owners acquired an exclusive property therein, are bad.

At Law. On demurrer to indictment.

*George D. Reynolds,* U. S. Atty.

*John M. Holmes* and *Kerr & Kerr,* for defendants.

THAYER, J. These are indictments under section 1 of the act of August 14, 1876, to punish counterfeiting of trade-marks that have been registered in accordance with the laws of the United States. The section is as follows:

"Be it enacted that every person who shall, with intent to defraud, deal in or sell * * * any goods of substantially the same descriptive properties as those referred to in the registration of any trade-mark, pursuant to the statutes of the United States, to which, or to the package in which, the same are put up, is fraudulently affixed said trade-mark, or any colorable imitation thereof, calculated to deceive the public, knowing the same to be counterfeit or not the genuine goods referred to in said registration, shall, on conviction thereof, be punished," etc. *Vide* 1 Supp. Rev. St. U. S. 241.

The law was evidently designed to punish those who, with fraudulent intent, pirate a valid trade-mark which has been duly registered by the commissioner of patents. If a person, by any means, secures the registration of a mark, symbol, word, or device, claiming it to be a trade-mark, which, according to the rules of the common law, is not a valid trade-mark, another person who affixes the same mark, symbol, or device to his own goods, and sells them, cannot be punished under the penal statute above quoted. Registration does not create a trade-mark; nor is it conclusive proof that the person procuring registration has a valid trade-mark. Property in a trade-mark can only be acquired by the adoption of some mark, symbol, sign, or word susceptible of being used as a trade-mark, and by the actual application of the same to goods, wares, or merchandise of a certain class, so that it serves to indicate the origin or ownership of the particular commodity. Congress, by the act of March 3, 1881, (1 Supp. Rev. St. U. S. 606,) has merely provided for the registration of a certain class of trade-marks used in commerce with foreign nations or Indian tribes, when, according to common-law tests, a right to use the mark, symbol, or word as a trade-mark is established to the satisfaction of the commissioner of patents. Admission to registration under the act of March 3, 1881, is merely an ad-

mission on the part of the government that the applicant for registration is the owner of a valid trade-mark. The certificate of registration granted by the commissioner is only *prima facie* evidence of that fact, but it does not conclude a third party. The certificate is not a grant of any right or privilege; it is merely a recognition on the part of the government of the existence of an asserted exclusive right to affix a certain mark, symbol, word, or device on certain goods, as a trade-mark. Browne, Trade-Marks, §§ 338, 374–378, inclusive.

Necessarily, therefore, in a criminal proceeding under the act of August 14, 1876, the question whether the trade-mark involved (it having been admitted to registration) is valid, is an issuable question. In view of what has been said, it would seem reasonable to require a pleader, in drawing an indictment under the act of August 14, 1876, to allege that the person or persons claiming the trade-mark involved, at some given time and place, adopted the same (describing it) and used it in commerce with foreign nations or with Indian tribes on a certain class of goods, (describing them,) to indicate their origin or ownership, and caused the said trade-mark on a certain day to be registered in the patent-office, in accordance with law, and that, thereafter, the defendant, with intent to defraud, dealt in or sold certain goods (describing them) of substantially the same descriptive properties as those referred to in the registration of the trade-mark in question, to which goods, so sold, was fraudulently affixed the registered trade-mark in question, or a colorable imitation thereof, he, the said defendant, well knowing the goods so sold not to be the genuine goods referred to in said registration, etc. Allegations equivalent to those thus generally outlined, appear to me to be requisite to constitute a valid indictment. An indictment ought to allege facts showing the existence of a valid trade-mark as well as the fact that registration has been obtained, inasmuch as the registration does not create a trade-mark; and inasmuch as the certificate of registration is, at best, only convenient *prima facie* evidence that a certain word or symbol has become a trade-mark. The owner of a trade-mark acquires the same by acts wholly independent of the registration thereof, and registration is not even necessary to entitle him to protection in a civil proceeding, although it is necessary to secure the protection of the penal statute.

Tested by these rules, the indictments now in question are bad. They contain no allegations showing that Battle & Co., who appear to have registered the word "Bromidia" as a trade-mark, ever acquired an exclusive property therein. No acts done by Battle & Co., sufficient in law to give that firm a title to the word "Bromidia," are alleged. The indictments appear to have been drawn on the theory (which, for reasons above indicated, I deem erroneous) that it was sufficient for the indictment to show merely that the word "Bromidia" had been admitted to registration, and that defendants had subsequently sold goods of substantially the same descriptive properties as those referred to in the registration, to which was affixed the word "Bromidia." An allegation that a word has been admitted to registration by the commissioner, is not a sufficient averment in a criminal proceeding that a certain

person has acquired an exclusive right of property in the word when affixed to a certain class of goods, because, notwithstanding such registration, the word may not have become a valid trade-mark, either because the necessary steps have not been taken to make it a trade-mark, or because the word itself, for certain reasons, is not susceptible of appropriation for that purpose. Take the word "Bromidia" as an example. If it is a generic word,—that is, the name by which an article or compound which any one may make or sell is generally known, and which must necessarily be used in describing that article,—it clearly cannot be appropriated as a trade-mark, and registration of the word, though allowed, confers no rights. If, as seems highly probable, the word "Bromidia" is used, and is regarded by the public more as a description of the qualities and an ingredient of the article to which it is affixed, as containing bromine, than as indicative of the origin and ownership of the article, it cannot be appropriated as a trade-mark. *Burton* v. *Stratton*, 12 Fed. Rep. 698, and cases cited; Browne, Trade-Marks, §§ 134, 135. These considerations serve, in my judgment, to show the necessity of averring a state of facts, which, as a matter of law, is sufficient to make the word a valid trade-mark. Without such averments, a criminal offense is not stated with sufficient certainty.

It is claimed by defendants' counsel that the indictments are bad for various other reasons, and among the number, because the trade-mark law of July 8, 1870, was void, congress having no power to pass such a law, as was held in the *Trade-Mark Cases*, 100 U. S. 82, and because at the time of the enactment of the penal act of August 14, 1876, under which the indictments are drawn, there was nothing upon which that act could operate, and it was therefore nugatory, and remained inoperative, even after the passage of the act of March 3, 1881, *supra*. It is unnecessary, however, at this time to express any opinion concerning the novel question thus raised, as the indictments must be held bad for the reasons heretofore indicated. Demurrer sustained.