**VICTOR TOOL AND MACHINE CORPORATION, a corporation, and Panama Awning Co., a corporation, Plaintiffs,**

v.

**SUN CONTROL AWNINGS, INC., a corporation, Sun Control Manufacturing and Distributing Co., a corporation, and Charles W. Suchner, jointly and severally, Defendants.**

Civ. No. 28353.

United States District Court
E. D. Michigan, S. D.
Jan. 9, 1968.

Affirmed 6 Cir., 411 F.2d 792.

Austin A. Webb, Kalamazoo, Mich., for plaintiff; Carey & Carey, Detroit, Mich., of counsel.

Hiram P. Settle, Jr., Southfield, Mich., for defendants.

## OPINION

KAESS, District Judge.

The jurisdiction of this court is invoked under Title 28, Section 1338 of the United States Code.[1] The contro-

---

1. § 1338 Patents, copyrights, trade-marks, and unfair competition.

   (a) The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, copyrights and trade-marks. Such jurisdiction shall be exclusive of the courts of the states in patent and copyright cases.

versy in this litigation resides in the trademark "SUN CONTROL" as applied to metal awnings and canopies, as well as various other building components such as siding, storm windows and doors, screen doors, window screens, etc. The proofs in this matter have been submitted to the court without a jury. The issue of damages has been stipulated by the parties to be reserved until the determination, if any, of the infringement of the trademark use of the words "SUN CONTROL".

Plaintiff, Victor Tool and Machine Corporation, is a corporation of the State of Michigan having as a registered agent the Corporation Company Dime Building, Detroit, Michigan. Plaintiff, Panama Awning Co., is a corporation of the State of Michigan, having its principal place of business at 26801 West Seven-Mile Road, Detroit, Michigan.

Defendant, Sun Control Awnings, Inc., is a corporation of the State of Michigan, having its principal place of business at 26400 West Eight-Mile Road, Southfield, Michigan. Defendant, Sun Control Manufacturing and Distributing Co., is a Michigan corporation having its principal office at 26400 West Eight-Mile Road, Southfield, Michigan. Defendant, Charles W. Suchner, is an officer and director of both corporate defendants and resides at 4430 East Dowridge Drive, Keego Harbor, Michigan.

Plaintiff, Victor Tool and Machine Corporation, manufactures various building components, namely, folding aluminum awnings and canopies. The plaintiff, Victor, has manufactured such awnings since about 1950. Victor does not sell directly to the public, but rather sells its building components through various retail dealers and distributors. In the Detroit area the plaintiff, Panama, is the presently authorized exclusive agency for Victor folding aluminum awnings and has been so authorized since about June 1, 1964.[2]

Defendant, Sun Control Awnings, Inc., and its predecessor companies, Dye Home Improvement Company and Re-Build-O Supply Company, were the authorized sellers of awnings manufactured by the plaintiff, Victor, in the Detroit, Michigan, area from about 1951 to 1963, this arrangement being cancelled by the plaintiff by telegram dated February 22, 1963.[3]

Defendant, Sun Control Awnings, Inc., was incorporated in the State of Michigan on April 2, 1952 [4] and the first meeting of the stockholders and Board of Directors was held on March 27, 1952.[5] From the testimony introduced at the trial, it is clear that defendant, Sun Control, was doing business under this name by the end of February, 1952, and plaintiff, Victor, had knowledge of such corporation prior to March 21, 1962.[6]

Both defendant, Sun Control, and plaintiff, Victor, claim rights under their respective trademark registrations. Defendant, Sun Control, first registered its trademark by an application filed December 13, 1952 and registered on June 15, 1954.[7] This registration indicates a date of first use of February, 1952, and bears Registration No. 591,002, and this date of first use was not effectively challenged by plaintiffs at the trial. Defendant, Sun Control, has a second Supplemental Registration No. 780,759 registered on November 24, 1964 on an application filed February 18, 1963, and alleges a date of first use to be November, 1962.[8] The plaintiff also has a trademark Registration No. 596,578 registered on October 12, 1954 and states

(b) The district courts shall have original jurisdiction of any civil action asserting a claim of unfair competition when joined with a substantial and related claim under the copyright, patent or trade-mark laws. June 25, 1948, c. 646, 62 Stat. 931.

2. Plaintiffs' Trial Exhibit #17

3. Plaintiffs' Trial Exhibit #16
4. Defendants' Trial Exhibit T
5. Defendants' Trial Exhibit U
6. Defendants' Trial Exhibit #13
7. Plaintiffs' Trial Exhibit #3
8. Plaintiffs' Trial Exhibit #4

the first date of use to be December 11, 1952.[9]

The trademark registrations all incorporate designs in addition to the words "Sun Control". Both of defendants' registrations incorporate a sunburst design in either a circular or oval pattern, while plaintiffs' registration incorporates the words "Sun Control" printed in contrasting type over a representation of a folding awning bearing the words "Victor Sun Control".

The primary controversy regards the ownership and dates of first use of the words "Sun Control". Plaintiffs allege that an advertisement in the January, February and March, 1950, issues of Building Specialties magazine constitutes its first use of the trademark "Sun Control".[10] Giving plaintiffs the benefit of the doubt, and assuming that such advertisements were published on this date, this supposed first use utilizes the phrase "Sell Year-Round Sun Control with Victor Folding Aluminum Awnings". It appears from the phrase of the advertisement (1) that the products being sold were Victor folding aluminum awnings and (2) that the phrase "Sun Control" was used only in a descriptive or advertising sense.

Plaintiffs also introduced and relied upon various early sales brochures and other literature which it distributed to its retailers for their use. From the brochures themselves and the testimony in connection therewith, all such literature which is dated prior to about December, 1952, constitutes utilization of the term "Sun Control" in an advertising or descriptive sense only. The advertised products were sold as the "Victor folding aluminum awnings" until after the name "Sun Control" was adopted by defendant as its Company name and its trademark.

Since the controversy regarding the first use of the trademark "Sun Control" is critical to this decision and since the evidence surrounding the adoption of the words "Sun Control" as a trademark occurred some 15 years ago, it is necessary to review the documentary evidence which is roughly contemporaneous with the first utilization of the term "Sun Control" as applied to the products themselves.

The court notes that plaintiff, Victor, at the time of filing its trademark application (January 19, 1953) claimed a date of first use of the trademark, as applied to the goods, of December, 1952. Victor in its originally filed application incorporated this statement "the words 'Sun Control' were first used on or about January, 1949," but this allegation was deleted from the trademark application after filing.[11] Thus the first date of use was December, 1952.

Defendant in its trademark Registration No. 591,002 filed in December of 1952, claimed a date of first use of February, 1952.[12] This appears to be contemporaneous with the actual incorporation of the defendant, Sun Control Awnings, Inc., the corporation being in existence and operating as a de facto corporation during the last part of February, 1952.

Thus, the contemporaneous statements of the parties themselves made 15 years ago indicate that defendants are clearly entitled to priority in the utilization of the name in a proper trademark sense and in connection with the goods, while any alleged use by plaintiff, Victor, earlier than December, 1952, was done only in advertising and/or descriptive use. The plaintiff, Victor, has not overcome the presumption of ownership resulting from the registration of defendant, Sun Control Awnings, Inc. Plaintiffs introduced no evidence showing that defendants' use of its trademark or the words "SUN CONTROL" was for the benefit of plaintiffs.

So far as the plaintiff, Panama, is concerned, Panama was appointed the sales agent for the plaintiff, Victor, on

---

9. Plaintiffs' Trial Exhibit #1

10. Plaintiffs' Trial Exhibit #7

11. Plaintiffs' Trial Exhibit #1

12. Plaintiffs' Trial Exhibit #3

June 1, 1964.[13] Even then, Panama was merely appointed the authorized distributor for "Victor Sun Control Awnings".

After the adoption of the trademark "Sun Control" by the defendant, Sun Control Awnings, Inc., the defendant, Sun Control Awnings, Inc., became the largest single retailer of the plaintiff, Victor Tool and Machine Corporation.[14]

The history of the relationship between the plaintiff, Victor, and the defendants included various financial arrangements whereby defendant, Sun Control, would finance its inventory by bank loans with repurchase agreements by plaintiff, Victor, the proceeds from these loans being utilized by Victor to finance its manufacturing. Such arrangements are normal commercial operational procedures and do not effect the trademark rights between the parties.

The evidence shows that defendant, Sun Control, and defendant, Charles W. Suchner, requested additional products from the plaintiff, Victor, but such products were not forthcoming and eventually the defendants, Sun Control and Suchner, decided that Sun Control would manufacture its own variety of awnings and other similar products.[15] By this time, the winter of 1963, Sun Control Awnings, Inc., had been selling under the trademark "Sun Control" for some 11 years and had built up a substantial business in folding aluminum awnings and similar products and had expended ever increasing amounts in the advertising of its products under the words "Sun Control" and under its corporate name of "Sun Control Awnings, Inc."

Plaintiff, Victor, gradually began to utilize the term "Sun Control" in connection with folding aluminum awnings and canopies which they manufactured, but such use was condoned by the defendants, Sun Control and Suchner, in order to promote and advance the sale of awnings by the plaintiff, Victor. In fact, at one time the defendant, Suchner, and one Frank Taormina, one of the co-founders of the defendant, Sun Control, entered into an agreement with the plaintiff, Victor, to sell folding aluminum awnings on the West Coast under the name "Sun Control", such awnings to be supplied by the plaintiff, Victor. However, this contract was never consummated and was, in fact, cancelled without ever actually going into effect. The contract is of no effect in this controversy.

On February 22, 1963, Victor cancelled the selling rights of Sun Control Awnings, Inc.[16] On June 1, 1964, plaintiff, Panama, was appointed Victor's sales agent in the Detroit area.[17] Defendant, Sun Control, continued to sell under the corporate name which it had adopted in February of 1952 and continued to sell awnings under the trademark which it continuously utilized since February of 1952.

Panama Awning Co. was founded by former employees of the defendant, Sun Control Awnings, Inc., and the word "Panama" had been previously utilized on awnings sold in 1956 by House Beautiful Building Company, a company primarily owned by the defendant, Suchner, and closely related to the defendant, Sun Control.[18] In fact, at least one of the principals in the Panama Awning Co., Mr. Alger, admitted that he had sold Panama awnings while he was employed by Sun Control.

Panama Awning Co. chose a location that was about 2 miles from that of defendant, Sun Control, and placed a large sign over its place of business which prominently used the words "Sun Control". Admittedly, this sign contained the word "Victor", but in extremely small print. The words "Panama" did not even appear on the place of business of Panama Awning Co.[19]

13. Plaintiffs' Trial Exhibit #17

14. Williams' Deposition, pages 75–77

15. Williams' Deposition, pages 73–75

16. Plaintiffs' Trial Exhibit #16

17. Plaintiffs' Trial Exhibit #17

18. Defendants' Trial Exhibit F-1

19. Defendants' Trial Exhibit L

Panama closely approximated the sunburst design of defendant, Sun Control's, second registered trademark, Registration No. 780,759, and such cards were utilized by employees of the plaintiff, Panama, during personal sales contacts.[20]

Panama acquired a telephone number which had been utilized by defendant, Sun Control Awnings, Inc., for some 12 years. The apparent purpose for acquiring this telephone number was to receive calls from former customers of Sun Control Awnings, Inc., as the number was prominently displayed on stickers containing the Sun Control trademark and applied to awnings previously sold by Sun Control.

Panama adopted a form of advertisement utilizing the words "Sun Control" in large prominent print and in the same script utilized by defendant, Sun Control, with the name Victor appearing in much smaller print and in a much less prominent location. Such advertising appeared in the same advertising media and on the same dates.[21]

At the trial defendants produced three witnesses, each of whom had previously been a customer of defendant, Sun Control, and who testified that they thought they were calling defendant, Sun Control, when they were actually calling plaintiff, Panama Awning Co. All of these parties actually entered into sales contracts with Panama when they thought they were entering into contracts with Sun Control. The contracts that they had signed were such that the company name was not clearly visible, and none of the three witnesses was ever informed that they were dealing with Panama until after the sales contracts had been signed.

Panama Awning Co. and Victor Tool and Machine Corporation adopted telephone listings in both the white pages and the yellow pages in the Detroit Metropolitan area which were misleading in that they listed the Panama Awning Co. number under "Sun Control by Victor", when no such company existed.

The witness Alger testified to the receipt of many calls from the Better Business Bureau and others because of the misleading advertising and the deception of potential customers by Panama Awning Co. Eventually the Detroit newspapers refused to accept advertising of Panama Awning Co. and the sign on the Panama Company building was replaced with an accurate sign at the insistence of the Better Business Bureau, and the various licensing agencies of the City of Detroit and the State of Michigan have required changes in the advertising and sales practices of the Panama Awning Co., to force differentiation between products of the plaintiff and defendants' products.

Considering all of the evidence introduced at the trial of this cause, it is clear that in the Metropolitan Detroit trading area and when applied to home improvement products, the words "SUN CONTROL" mean defendant, Sun Control Awnings, Inc. and the products and services sold by defendant, Sun Control Awnings, Inc.

A "trademark" has been defined as a sign, device, or mark by which articles produced or dealt in by a particular person or organization are distinguished or distinguishable from those produced or dealt in by others.[22] It has been held that in many aspects a trademark resembles, and perhaps is identical with, the good will of a business or establishment.[23]

The objects of a trademark are to point out distinctly the origin or ownership of the article to which it is affixed, to secure to him who has been

---

20. Defendants' Trial Exhibit C–1, D–1, E–1

21. Defendants' Trial Exhibits C and D

22. 15 U.S.C. § 1127

23. Beech-Nut Packing Co. v. P. Lorillard Co., 273 U.S. 629, 47 S.Ct. 481, 73 L.Ed. 810 (1927); Bulova Watch Co. v. Steele, 194 F.2d 567 (1952).

instrumental in bringing into the market a superior article of merchandise, the fruit of industry and skill and to prevent fraud and imposition.[24] In this respect, a trademark has been likened to the business autograph of the owner, amounting to a representation that the articles on which it is placed are made or prepared by him. The use of a trademark, however, does not necessarily and as a matter of law impart that the articles on which it is used are manufactured by its user. It is enough that they are manufactured for him, that he controls their production, or that they pass through his hands in the course of trade and that he gives to them the benefit of his reputation or of his name and business style.[25]

■ The right to a trademark is acquired by appropriation and use as such.[26] Actual use in commerce in connection with the goods is necessary to the acquisition of any rights. In United Drug Co. v. Theodore Rectanus Co., 248 U.S. 90, 39 S.Ct. 48, 63 L.Ed. 141, the United States Supreme Court said (248 U.S. 90, 39 S.Ct. 48, 63 L.Ed. 145):

"There is no such thing as property in a trademark except as a right appurtenant to an established business or trade in connection with which the mark is employed. The law of trademarks is but a part of the broader law of unfair competition; the right to a particular mark grows out of its use, not its mere adoption; its function is simply to designate the goods as the product of a particular trader and to protect his good will against the sale of another's product as his; and it is not the subject of property except in connection with an existing business.

Hanover Star Mill. Co. v. Metcalf, 240 U.S. 403, 412–414, 36 S.Ct. 357, 60 L.Ed. 713, 717–719."

■ Plaintiff's advertising use, even if established, cannot give plaintiff any trademark rights, since a trademark must be used on or in direct connection with the goods, and a mere advertising use is insufficient to support a valid trademark.

In Gray v. Armand Co., 50 App.D.C. 50, 24 F.2d 878, the Court of Appeals, District of Columbia, said:

"The sole question, therefore, is whether or not this constitutes a legal trademark use. It is settled law that the office of a trade-mark is to distinctly point out the origin or ownership of the article to which the mark is attached. It follows, therefore, that, to establish a right to the registration of a trade-mark, two things are necessary: That it must have been actually applied to vendible goods, and that the goods have been sold in interstate commerce. As this court said in Battle Creek Sanitarium Co. v. Fuller, 30 App.D.C. 411: 'To constitute a trademark use, the mark must be attached or applied to the goods. Columbia Mill Co. v. Alcorn, 150 U.S. 460, 464, 14 S.Ct. 151, 37 L.Ed. 1144, 1146. Property in it can only be acquired by the actual application of it to goods of a certain class, so that it serves to indicate the origin of the goods—that is to say, identify them with the particular manufacturer or trader—and to distinguish them from similar goods. United States v. Braun (D.C.) 39 F. 775; 28 Am. & Eng.Enc.Law, p. 346. The mere advertisement of the words

24. General Motors Corp. v. Cadillac Marine & Boat Co., D.C., 226 F.Supp. 716 (Mich. 1964); Jean Patou Inc. v. Jacqueline Cochran, Inc., D.C., 201 F.Supp. 861, aff'd 2 Cir., 312 F.2d 125 (1962); G. Leblanc Corp. v. H. & A. Selmer, Inc., 7 Cir., 310 F.2d 449, cert. den. 373 U.S. 910, 83 S.Ct. 1299, 10 L.Ed.2d 412 (1962); Radio Shack Corp. v. Radio Shack, Inc., 7 Cir., 180 F.2d 200 (1950).

25. Feathercombs, Inc. v. Solo Products Corp., 2 Cir., 306 F.2d 251, cert. den. 371 U.S. 910, 83 S.Ct. 253, 9 L.Ed.2d 170 (1962).

26. Esso, Inc. v. Standard Oil Co., 8 Cir., 98 F.2d 1 (1937); William Rogers Mfg. Co. v. Rogers & Spurr Mfg. Co., 1 Cir., 11 F. 495 (1882).

or symbol, without application to the goods themselves, is insufficient to constitute a trade-mark.'"

Similarly, defendant's simultaneous adoption of its corporation name—Sun Control Awnings, Inc.—gives defendant the exclusive right to the company name or trade name.

In American Steel Foundaries v. Robertson, 269 U.S. 372, 46 S.Ct. 160, 70 L.Ed. 317, the United States Supreme Court said, at 269 U.S. 372, 380, 46 S.Ct. 160, 162, 70 L.Ed. 320 and 321:

"Whether the name of a corporation is to be regarded as a trade-mark, a trade name, or both, is not entirely clear under the decisions. To some extent the two terms overlap, but there is a difference more or less definitely recognized, which is that, generally speaking, the former is applicable to the vendible commodity to which it is affixed, the latter to a business and its good will. See Ball v. Broadway Bazaar, 194 N.Y. 429, 434–435, 87 N.E. 674. A corporate name seems to fall more appropriately into the latter class. But the precise difference is not often material, since the law affords protection against its appropriation in either view upon the same fundamental principles. The effect of assuming a corporate name by a corporation under the law of its creation is to exclusively appropriate that name. It is an element of the corporation's existence. Newby v. Oregon C. R. Co., et al., Deady 609, 616, Fed.Cas. No. 10,144. And, as Judge Deady said in that case: 'Any act which produces confusion or uncertainty concerning this name is well calculated to injuriously affect the identity and business of a corporation. And as a matter of fact, in some degree at least, the natural and necessary consequence of the wrongful appropriation of a corporate name, is to injure the business and rights of the corporation by destroying or confusing its identity.'"

In John Roberts Manufacturing Company v. University of Notre Dame Du Lac, 258 F.2d 256, the United States Court of Appeals said, at pages 258 and 259:

"The trial Court in its opinion announced a proposition of law which constituted the main premise for its decision and which, if sound, is dispositive of the issues argued on this appeal. The Court stated (152 F.Supp. 269, 271):

'The effect of assuming a name by a corporation under the law of its creation is to exclusively appropriate it as an element of the corporation's existence and the use of the name of a corporation on merchandise manufactured by another for sale in competition with the same type of merchandise of the corporation would not only be actual deception and create actual confusion but would of itself constitute a passing or palming off of its merchandise for that of the corporation, the name of which it is wrongfully using, and would be a most flagrant violation of the law of unfair competition.' In our judgment, the statement embodies a correct principle of law and, notwithstanding plaintiff's argument to the contrary, is supported by authority. Certainly it is supported by logic and common sense. Plaintiff, in our judgment, had no more legal right to appropriate defendant's corporate name and use it in connection with the manufacture and sale of rings than it had to purloin cash from defendant's safety box."

■ Defendant, Sun Control Awnings, Inc., as the first to actually utilize the words "SUN CONTROL" in a trademark sense and by virtue of its 15 years of continuous use of this trademark and of its corporate name is the true owner of the trademark here in contention. In view of this long and continuous use, these words have become distinctive of defendants' goods and services. The mere disclaimer of the words "SUN CONTROL" in defendants' trademark registrations does not deprive defendants of

any substantive rights in and to the trademark, as the words "SUN CONTROL" have become distinctive of the goods of Sun Control Awnings, Inc.[27]

Plaintiffs rely upon N.S.W.Co. v. Wholesale Lumber & Millwork, Inc., 6 Cir., 123 F.2d 38. This case is not determinative here because it simply is not premised on the same facts. In the reported case, the trademark had been used by the plaintiff in a proper trademark usage long before the defendant entered the field. The contrast with the factual situation here is quite evident.

Both parties allege actual confusion in the minds of the buying public. In view of these pleadings and especially in view of the evidence introduced at the trial by members of the buying public, the court concludes that such confusion does exist. This confusion, which is the result of the business practices of the plaintiff, Panama Awning Co., is to the detriment of defendants.

The business practices of plaintiffs, e. g., adoption of defendant's prior telephone number and the listing of defendant's telephone number under fictitious names, such as Sun Control Awnings by Victor, plaintiff, Panama, deliberately copying defendant's oval trademark design on business cards, utilizing the words "SUN CONTROL" in defendant's script and without the remainder of plaintiff Victor's registered trademark design, plaintiff Panama's failure to correct customer misunderstanding as to the source of its goods, and plaintiff Panama's selection of signs for its place of business, all show a pattern of unfair competition with defendant.

The confusion in the minds of the buying public results from the improper utilization by plaintiff of the defendant's trademark and corporate identity "SUN CONTROL" or material variations thereof.

If plaintiffs had been content to sell under their respective corporate names, i. e., Victor Tool and Machine Corp. and Panama Awning Co., and/or to utilize the trademark exactly as registered under Registration No. 596,578, such confusion in the minds of the buying public would not have occurred.

The essence of this controversy is the meaning to the interested segment of the public of the words "SUN CONTROL" as applied to the whole class of goods relating to home improvement products. In the trading area here in controversy these words mean the products and services of Sun Control Awnings, Inc. The acts of trademark infringement and unfair competition performed by plaintiffs resulted from their attempts to capitalize upon this meaning in a manner such that the public became confused as to the source of such products and services. Under these circumstances, the rights of the defendants are not limited to such formal, registered trademark rights as they may possess, and the damages need not be so limited.

Since it is the court's decision that the plaintiffs have infringed upon the defendants' trademark, an injunction to this effect shall issue. However, there is insufficient proof before the court as to the limitations or extent of the permanent injunction.

If the parties hereto can agree on an injunction in accordance with this opinion, it may be so submitted. If not, the defendants and cross-plaintiffs shall submit a proposed permanent injunction and notice it on for an evidentiary hearing within 30 days.

Similarly, if the issue of damages is to be resolved by the court, it too should be called to the court's attention so that this matter may again be set for trial on the reserved issue of damages, as stipulated.

---

27. 15 U.S.C. § 1056 *Disclaimer of unregistrable matter*
   (b) No disclaimer, including those made under paragraph (d) of Section 1057 of this title shall prejudice or affect the applicant's or registrant's rights then existing or thereafter arising in the disclaimed matter, or his right of registration on another application if the disclaimed matter be or shall have become distinctive of his goods or services.