**KOFFLER STORES, LTD., Plaintiff,**

v.

**SHOPPERS DRUG MART,
INC., Defendant.**

**Civ. A. No. 5–71720.**

United States District Court,
E. D. Michigan, S. D.

Dec. 22, 1976.

698

Lawrence S. Jackier, Southfield, Mich., Friedman, Meyers & Keys, Detroit, Mich., Arthur H. Seidel, Philadelphia, Pa., for plaintiff.

Allen M. Krass, Troy, Mich., for defendant.

## OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

KAESS, District Judge.

Plaintiff Koffler Stores, Ltd. brought suit against Shoppers Drug Mart, Inc., alleging unfair competition, violation of the Paris Convention for the Protection of Industrial Property of 1888, and of the Lanham Trademark Act of 1946.[1] Plaintiff brings this Motion for Summary Judgment, pursuant to Rule 56, Federal Rules of Civil Procedure. As with other areas of the law, summary judgment is proper where the depositions and answers to interrogatories, together with the affidavits, establish that there is no genuine issue as to any material facts. Rule 56(c), F.R.Civ.P.; *Ford Motor Co. v. Ford Insecticide Corp.*, 69 F.Supp. 395, 398 (E.D.Mich.1947); *Community of*

*Roquefort v. William Faehndrich, Inc.*, 303 F.2d 494, 498 (2nd Cir. 1962).

In the present case, the following facts are uncontroverted. Plaintiff Koffler Stores, Ltd. is a Canadian corporation (Goldman Aff. at 6) engaged in the retail drug business and in the franchising of retail drug outlets. Both do business under the trade name "SHOPPERS DRUG MART," and use a stylized mortar-pestle logo. (Goldman Aff. at 4, 10). Three of these stores are located in Windsor, Ontario. (Goldman Aff. at 5). Koffler also markets private label products under the trademark "SHOPPERS DRUG MART." (Goldman Aff. at 16). Defendant Shoppers Drug Mart, Inc. is a Michigan corporation which operates five retail drug stores in the Detroit area. Both the stores of Plaintiff and Defendant are designed along "supermarket" principles. (Goldman Aff. at 7; Sloban Dep. at 48–9). Both sell similar items (Goldman Aff. at 7; Sloban Dep. at 47), and both sell items under the private label "SHOPPERS DRUG MART" (Goldman Aff. at 17; Klayman Aff. at 3). Thus, it appears from the undisputed facts that the operations of Plaintiff and Defendant are similar, and that they sell essentially the same type of products.

Plaintiff seeks an injunction from continued use of its name, mark, and logo by Defendant. Since it is necessary to establish priority of use under the federal trademark laws, the Court will summarize the pertinent business activities of the respective parties by means of the following table.

---

1. The Lanham Act defines a "service mark" as "a mark used in the sale or advertising of services to identify the services of one person and distinguish them from the services of others." 15 U.S.C. § 1127.

Courts have defined a "trade name" and distinguished it from a "trademark." "Generally speaking, a trade-mark is applicable to the vendible commodity to which it is affixed, and a trade name to a business and its good-will." *Standard Oil Co. v. Standard Oil Co.*, 252 F.2d 65, 71 n.9, 116 U.S.P.Q. 176 (10th Cir.) See

also Restatement of Torts § 716 & comment *a* (1938). We have noted that "the precise difference [between trademarks and trade names] is immaterial as the law protects against the appropriation of either upon the same fundamental principles." *Standard Oil Co.*, supra, at 71, 116 U.S.P.Q. at 179–180.

In this Opinion the term "trade name" is used with reference to both the name and the mark which form the basis for the dispute, both in regard to the common law and the Lanham Act.

| | Plaintiff | | Defendant |
|---|---|---|---|
| 1921 | KOFFLER DRUG STORES commences operations in Canada (Goldman Aff. at 3). | | |
| | | 1961 | Defendant commences business as DRUG MART in the Detroit area (Sloban Dep. at 4). |
| 1962 | Koffler Drug Stores adopts the service mark SHOPPERS DRUG MART (Goldman Aff. at 5). | | |
| | | 1963 | Defendant adopts mark SAV–WAY DRUG MART (Sloban Dep. at 5). |
| 1968 | Koffler joins International Council of Shopping Centers (Goldman Aff. at 52). | | |
| Feb., 1968 | Koffler begins to market goods under the private label SHOPPERS DRUG MART (Goldman Aff. at 16). | | |
| June, 1968 | Koffler Drug Stores merges with Plaza Drug Stores to form Koffler Stores, Ltd. (Goldman Aff. at 4). | | |
| 1969 | Stylized mortar-pestle design is designed for Koffler and adopted as logo (Goldman Aff. at 20). | | |
| 6/27/69 | Koffler secures Canadian trademark Registration for SHOPPERS DRUG MART (Goldman Aff. at 13). | | |
| 1970 | Koffler first advertises SHOPPERS DRUG MART in U.S. (Buffalo area) and begins extensive advertising over CKLW (Windsor area) (Kert Aff. at 4, 10). | | |
| 8/12/70 | Koffler opens first SHOPPERS DRUG MART in Windsor (Goldman Aff. at 34). | | |
| | | 12/11/70 | Defendant's stockholders vote to change corporate name to SHOPPERS DRUG MART, INC. (Sloban Aff. at 2; Exh. 18 to Sloban Dep.) |
| 1971 | Koffler expends $57,468.85 for advertising on Seattle and Buffalo television (Kert Aff. at 4). | | |
| | | 5/28/71 | Certificate of Amendment signed to change Defendant's corporate name to SHOPPERS DRUG MART, INC. (Sloban Dep. at 15; Exh. 18 to Sloban Dep. at 18). |
| 3/8/72 | Plaintiff applies for a U.S. trademark registration for SHOPPERS DRUG MART (Seidel Aff. at 4). | | |
| | | 10/23/72 | Defendant orders banner for front window of Ecorse store which contains the words SHOPPERS DRUG MART and is placed in the window some time thereafter.[2] (Koffman Aff. at 6–7; Zalk Aff. at 4–6). |
| 3/7/73 | Plaintiff opens second SHOPPERS DRUG MART store in Windsor area (Goldman Aff. at 34). | | |
| 4/16/73 | Plaintiff opens a third SHOPPERS DRUG MART store in Windsor area (Goldman Aff. at 34). | | |

2. This fact is disputed by plaintiff. However, it will be accepted as true for the purpose of this Motion.

| | Plaintiff | | Defendant |
|---|---|---|---|
| | | 4/26/73 | Certificate of Amendment changing defendant's corporate name is filed with Secretary of the State of Michigan (Sloban Dep. at 35–6). |
| 2/12/74 | Koffler secures U.S. trademark registration for SHOPPERS DRUG MART (Seidel Aff. at 4). | | |
| | | Apr.–May, 1974 | Mailers sent by defendant announce name change (Exhs. to Sloban Dep. 4, 30). |
| | | August, 1974 | Mr. Zalk and Mr. Bennett of defendant visit plaintiff's store in Devonshire Mall, Windsor (Zalk Dep. at 6; Bennett Dep. at 6–8). |
| | | Sept., 1974 | Telephone directories first list defendant as SHOPPERS DRUG MART (Schloss Aff. at 3). |
| Oct., 1974 | Plaintiff opens first store in U.S. (Florida) (Goldman Aff. at 56). | | |
| | | Winter, 1974–75 | Defendant adopts stylized mortar-pestle logo previously adopted by plaintiff (Exhs. 24–25 to Sloban Dep.). |
| | | 11/4/74 | Private labels are prepared for defendant as SHOPPERS DRUG MART (Klayman Aff. at 2). |
| | | 11/15/74 | McKesson & Robbins Drug Co. submits first invoice to defendant as SHOPPERS DRUG MART (Sweet Aff. at 4). |
| | | 12/3/74 | Defendant receives notice of infringement from plaintiff. |
| | | 8/19/75 | Defendant secures service mark registration within the State of Michigan for SHOPPERS DRUG MART (Sloban Aff. at 53–4). |
| 9/8/75 | The present suit is filed in this Court. | | |

## LANHAM TRADEMARK ACT

In order for Defendant to have any right to the use of SHOPPERS DRUG MART, it must establish innocent appropriation and use of the trademark, i. e., acquisition of common law trademark, prior to Plaintiff's federal trademark registration. *Victor Tool and Machine Corp. v. Sun Control Awnings, Inc.*, 299 F.Supp. 868 (E.D. Mich.1968), *affd.* 411 F.2d 792 (6th Cir. 1968). Defendant asserts that its use of the mark SHOPPERS DRUG MART began in November, 1972, when a banner was placed in the front window of the Ecorse store, which read SHOPPERS DRUG MART. In order to establish use of a trade or service mark, it is necessary that there be some nexus between the mark and the goods or services produced by the corporation. In *Victor Tool and Machine Corp., supra*, the court held that plaintiff's advertising use did not give rise to any trademark rights, since a trademark must be used on or in connection with the goods. Mere advertising use is insufficient to support a valid trademark.

The court went on to quote from *Gray v. Armand Co.*, 58 App.D.C. 50, 24 F.2d 878 (1928).

The sole question, therefore, is whether or not this constitutes a legal trade-mark

use. It is settled law that the office of a trade-mark is to distinctly point out the origin or ownership of the article to which the mark is attached. It follows, therefore, that, to establish a right to the registration of a trade-mark, two things are necessary: That it must have been actually applied to vendible goods, and that the goods have been sold in interstate commerce. As this court said in *Battle Creek Sanitarium Co. v. Fuller*, 30 App.D.C. 411: 'To constitute a trademark use, the mark must be attached or applied to the goods. *Columbia Mill Co. v. Alcorn*, 150 U.S. 460, 464, 14 S.Ct. 151, 37 L.Ed. 1144, 1146. Property in it can only be acquired by the actual application of it to goods of a certain class, so that it serves to indicate the origin of the goods—that it to say, identify them with the particular manufacturer or trader— and to distinguish them from similar goods. *United States v. Braun* (D.C.), 39 F. 775; 28 Am. & Eng.Enc.Law, p. 346. The mere advertisement of the words or symbol, without application to the goods themselves, is insufficient to constitute a trade-mark.'

In the present case, the banner displayed in the window of the Ecorse store after October 23, 1972 by Defendant read only SHOPPERS DRUG MART. It contained no reference to the fact that this was to be considered the name of the store.[3] Nor was there any connection between the words on the banner and the products sold by the store.[4] The words SHOPPERS DRUG MART would have no more connection to the products dispensed by Defendant than would a similar banner reading PRESCRIPTIONS. Thus, Defendant can acquire no priority by reason of such use prior to April or May, 1974.

Koffler Stores, Ltd. secured a United States trademark registration for SHOPPERS DRUG MART on February 12, 1974. Under the Lanham Act, trademark registration constitutes constructive notice of the registrant's claim of ownership of the mark. 15 U.S.C. § 1072. It affords protection which is nationwide and not confined to areas of actual use of the mark. Such notice also grants the owner of the registration a right superior to all subsequent users, and the right to enjoin their use. *Dawn Donut Co., Inc. v. Hart Food Stores, Inc.*, 267 F.2d 358 (2nd Cir. 1959). Once registration is effected, no subsequent adoption and use of the same or a similar mark for the same or similar goods can be justified on a claim of good faith. *Dawn Donuts, supra*, at 362; *Sterling Brewing v. Cold Spring Brewing Corp.*, 100 F.Supp. 412, 418 (D.Mass.1951); Callman, *Unfair Competition, Trademarks and Monopolies* (1976 ed.), § 97.3(b). By Defendant's own admission, except for the display of the banner, Defendant's first use of the mark did not occur until April or May, 1974, which was subsequent to the registration of Plaintiff's trademark. Therefore, Plaintiff has a valid claim based upon the Lanham Act.

However, Defendant contends that Plaintiff's trademark registration is invalid and accords no substantive rights because no use of the mark had been made in the United States at the time of the application to register, citing *John Lecroy & Son, Inc. v. Langis Foods Ltd.*, 376 F.Supp. 962 (D.D. C.1974). In that case the District Court held that a foreign applicant seeking to register a trademark in the United States could not, under either the Lanham Trade-Mark Act or the Paris Union Treaty, obtain a registration based on a priority use date where the trademark had never been used within the United States. The court rea-

3. The public first became aware of a change in the name of Defendant's stores in April or May of 1974 by means of mailers sent by Defendant to its customers. The April, 1974, mailer (Exh. 30 to Sloban Dep.) states, "Our 'SAV–WAY' Name Will Soon Be Changed to 'SHOPPERS DRUG MART' and new Stores Will Be Opened . . . Watch for Details." The May, 1974, mailer reads in part: "We Changed Our Name to SHOPPERS DRUG MART (Formerly 'SAV– WAY DRUG MART')" (Exh. 8 to Sloban Dep.) In September, 1974, telephone directories first listed Defendant as Shoppers Drug Mart.

4. It wasn't until November, 1974, that private labels were prepared for Defendant bearing the name SHOPPERS DRUG MART.

soned that rights in a trademark arise from its use, and that use of a trademark outside the United States did not establish or create priority rights within the United States. However, this case was recently reversed on appeal, *sub-nom SCM Corp. v. Langis Foods Ltd.*, 176 U.S.App.D.C. 194, 539 F.2d 196 (1976).[5] The Court of Appeals held that in accordance with the provisions of the International Convention for the Protection of Industrial Property (the Paris Union Treaty), when a foreign applicant applies for registration of a trademark in the United States within six months of registration of the trademark in another signatory to the Union, he is to be given the priority of his first use of the mark in the foreign country. In the present case, Plaintiff did not seek to register this mark within six months of the Canadian registration, so this provision of the Paris Union Treaty is not applicable. However, the Court of Appeals did uphold the validity of the United States trademark registration based solely upon its prior use within Canada. Thus, Defendant's contention that the United States trademark registration is invalid must be rejected.[6]

## UNFAIR COMPETITION

In addition, Plaintiff asserts the right to enjoin the acts of Defendant based upon the common law principles of unfair competition.

Trademark law is simply that part of the broader law of unfair competition which acknowledges that use of a name or symbol of a business rival is deceiving the public. Unfair competition was defined in *Marion Laboratories, Inc. v. Michigan Pharmacal Corp.*, 338 F.Supp. 762, 767 (E.D. Mich.1972), aff'd 473 F.2d 910 (6th Cir. 1973) as

> The simulation by one person, for the purpose of deceiving the public, of the name, symbols, or devices employed by a business rival, or the substitution of the

goods or wares of one person for those of another, thus falsely inducing the purchase of his wares and thereby obtaining for himself the benefits properly belonging to his competitor. The rule is generally recognized that no one shall by imitation or unfair device induce the public to believe that the goods he offers for sale are the goods of another, and thereby appropriate to himself the value of the reputation which the other has acquired for his own product or merchandise.

When a conflict between identical or similar trademarks arises, the court may consider several factors in determining whether the use of the similar mark constitutes unfair competition.

First, the court must consider whether the defendant's conduct gives rise to a likelihood of confusion among the public. *Hemmeter Cigar Co. v. Congress Cigar Co., Inc.*, 118 F.2d 64, 70 (6th Cir. 1941); *Penthouse International Ltd. v. Penthouse Club Ltd.*, 184 U.S.P.Q. 479, 490 (E.D.Mich. 1974). As stated earlier, both Plaintiff and Defendant operate similar enterprises, selling essentially the same products. Defendant appropriated both the trade name and the logo which were used in connection with the products and services of the Plaintiff. There can be no doubt that the public and the trade are likely to believe that there is some connection or affiliation between Plaintiff and Defendant. *National Dairy Products Corp. v. Willever*, 139 U.S.P.Q. 443, 449 (E.D.Mich.1963).

[11] Defendant argues that a good-faith junior user is entitled to injunctive relief against the senior user where the senior user attempts to enter a remote market area where the junior user has built up trademark rights in good faith. 2 J. Thomas McCarthy, *Trademarks and Unfair Competition*, § 26:1(C), at 207. The fact that Defendant adopted Plaintiff's distinctive logo some time after certain employees vis-

---

**5.** SCM Corporation is the successor in interest to Plaintiff John Lecroy & Son, Inc.

**6.** The Court also rejects Defendant's contention that the mark protected by the federal registra-

tion is not used in competition with Plaintiff's mark. Such argument is completely without merit.

ited Plaintiff's store in Windsor appears to negate any inference of innocent adoption. *See, Socony-Vacuum Oil Co., Inc. v. Rosen,* 108 F.2d 630, 636 (6th Cir. 1940).

■■■■ A second factor which should be considered by the court is the strength and value of the individual uses as trademarks. The extent of the owner's investment in his trademark will determine its value as a trademark. As Professor Callman states in *Unfair Competition, Trademarks and Monopolies,* § 76.3(a),

> Trademarks, like the volatile markets in which they appear, are dynamic. The commercial potency of any trademark is directly proportionate to the investment and energy dedicated to its development as a symbol of a product or business. The expenditure of money gives rise to a reasonable prospect of popularity. If, before such expectations can be realized, a predatory competitor intervenes, the presumptive popularity like the presumptive trade, should be protected. He who first started the effort should not be victimized by a 'Johnny-come late' arrival.

In the present case, Plaintiff's advertising has been extensive, and has circulated throughout the eastern portion of Michigan, as well as throughout other states adjacent to the Canadian-American border. (Kert Aff. at 4, 8, 9, 10, 14). A significant amount of this advertising originated in the United States. Thus, Plaintiff has developed a substantial business reputation through its use of this mark. It is generally accepted that such business reputation will be protected even though there is no actual competition between the parties. *Fund of Funds, Ltd. v. First American Fund of Funds,* 274 F.Supp. 517 (S.D.N.Y. 1967); *Penthouse International Ltd. v. Penthouse Club Ltd., supra.* Where advertising and good will extend beyond the immediate selling market, this reputation will be protected even though the prior user is far removed from the market of the new-

comer, and there is little likelihood of his expansion into that market. *Maison Prunier v. Prunier's Restaurant and Cafe,* 159 Misc. 551, 288 N.Y.S. 529 (1936); *Stork Restaurant v. Marcus,* 36 F.Supp. 90 (E.D.Pa. 1941); *51 West 51st Corp. v. Roland,* 139 N.J.Eq. 156, 50 A.2d 369 (1946) (Toots Shor Restaurant in New York and Toots Shores in Atlantic City).

■■■ Protection under common law principles has been extended beyond the prior user's actual good will zone to the area of his natural or probable expansion. *Sweet Sixteen Co. v. Sweet "16" Shop, Inc.,* 15 F.2d 920, 924 (8th Cir. 1926); *Food Fair Stores, Inc. v. Lakeland Grocery Corp.,* 301 F.2d 156, 161–3 (4th Cir. 1962); *Value House v. Phillips Mercantile Co.,* 523 F.2d 424, 187 U.S.P.Q. 657, 662 (10th Cir. 1975); *Rainbow Shops v. Rainbow Specialty Shops,* 176 Misc. 339, 27 N.Y.S.2d 390 (1941). Detroit is the natural area of Plaintiff's normal expansion since it lies on the Canadian-American border, and since the area has already been preconditioned through Plaintiff's advertising.[7]

In summary, Defendant's adoption and use of the mark SHOPPERS DRUG MART and the stylized mortar-pestle logo in connection with the sale of nearly identical goods and services to those offered by Plaintiff is likely to deceive and confuse the public. It is probable that the public would believe that Defendant is affiliated with Plaintiff's drug store chain. Such acts also dilute the value of the trademark as well as the good will which Plaintiff has built through advertising and business experience. Therefore, the acts of Defendant will be permanently enjoined, both as violating the Lanham Act and as violative of the common law principles of unfair competition.

In light of the above considerations IT IS ORDERED that Plaintiff's Motion for Summary Judgment be, and hereby is, granted.

---

**7.** CKLW and CKWW are Windsor, Ontario stations which beam into the Detroit area. Beginning in 1970, Plaintiff has advertised over these stations. The CKLW transmitter is located approximately one mile from downtown Detroit, and transmissions extend even into Toledo and Cleveland, Ohio. (Kert Aff. at 10).

## PERMANENT INJUNCTION

Plaintiff's Motion for Summary Judgment having been duly considered by the Court, and a decision having been rendered in an Opinion and Order of even date herewith;

IT IS HEREBY ORDERED that Defendant Shoppers Drug Mart, Inc., its directors, officers, agents, servants and employees, and all other persons in act of concert or privity or in participation with it, be, and hereby are, permanently restrained from doing, causing, or abetting any of the following:

(1) Directly or indirectly infringing Koffler's service mark SHOPPERS DRUG MART;

(2) Directly or indirectly using SHOPPERS DRUG MART, INC. in connection with the sale of retail drug store services or from using any words or letters which in any way imitate or simulate Koffler's mark so as to be likely to cause confusion or mistake or to deceive;

(3) Engaging in any acts or activities directly or indirectly calculated to trade upon the service mark, trade name, reputation, or good will of Koffler;

(4) Using in the sale, offering for sale, promoting, advertising, marketing and distributing of retail drug store services or any packages, cartons, labels, display cards, wrappers, signs, or any advertising matter whatsoever, the name SHOPPERS DRUG MART, INC., or any simulation or imitation or derivative thereof in any manner to feature the mark SHOPPERS DRUG MART or any variant thereof, so as to deceive or to tend to deceive or to falsely designate the origin or to falsely describe or represent the source of the services, or otherwise create confusion among Koffler's customers and the customers of Koffler's franchisees, the trade and the purchasing public as to the source of origin of SHOPPERS services.

IT IS FURTHER ORDERED that Defendant be, and hereby is, given a period of two months from the date hereof to comply with this Permanent Injunction.

IT IS FURTHER ORDERED that no further damages be, or hereby are, awarded, except that costs may be taxed to Defendant.