## WEISMAN *v.* KUSCHEWSKI.

1. INJUNCTION—SALES—TRADE NAMES—VIOLATION OF AGREEMENT NOT TO AGAIN ENGAGE IN BUSINESS.

 Where the owners of a coal and coke business conducted in the city of Detroit under the corporate name of "Kuschewski Bros., Inc.," sold the business and good will, with the right to use the corporate name, which was a valuable asset, and agreed that they would not again engage in business in said city or within 50 miles thereof, the purchasers are entitled to enjoin them from circumventing their agreement by conducting a similar business in their father's name, as the "John Kuschewski Coal Co.," at a yard owned by them and conducted by others at the time of the sale.

2. UNFAIR COMPETITION—USE OF NAME WITHOUT PURCHASE OF BUSINESS EVIDENCE OF FRAUD.

 An attempt to purchase, or otherwise acquire, the right to use a personal or family name, apart from a purchase of the business and its good will, in which the name has become valuable, is almost conclusive evidence of fraud and unfair competition.

3. SAME—NECESSARY TO SHOW PROBABILITY OF DECEPTION IF NO ACTUAL DECEPTION SHOWN.

 While, in order to make out a case of unfair competition,

it is not necessary to show that any person has been actually deceived by defendant's conduct, either actual or probable deception and confusion must be shown, for if there is no probability of deception, there is no unfair competition.

4. SAME—INJUNCTION REFUSED WHERE NO DECEPTION SHOWN IN SIX MONTHS OPERATION.

Plaintiffs, who conducted a coal and coke business under the name of "Kuschewski Brothers Coal Co." are not entitled to restrain the conducting of a similar business under the name of "John Kuschewski Coal Co.," on the ground of unfair competition, where the yards were a mile apart, in the absence of competent evidence that the public or any customers had been misled or confused into dealing with defendants in the belief that the business was plaintiffs', in the six months that it had been in operation.

5. DAMAGES—EVIDENCE INSUFFICIENT TO MEASURE DAMAGES FOR BREACH OF CONTRACT NOT TO RE-ENGAGE IN BUSINESS.

Evidence held, insufficient to measure plaintiffs' damages as the result of defendants' violation of their agreement not to again engage in business.

Appeal from Wayne; Johnson (Clayton C.), J., presiding. Submitted April 25, 1928. (Docket No. 25, Calendar No. 33,391.) Decided June 22, 1928.

Bill by William Weisman and another against John Kuschewski and others to enjoin the conducting of a coal and coke business in violation of contract and on the theory of unfair competition. From a decree for plaintiffs, defendants appeal. Modified and affirmed.

*Retan, Benjamin & Quay,* for plaintiffs.

*F. J. B. Sevald* and *D. P. Cassidy,* for defendants.

FEAD, C. J. For about 25 years, John Kuschewski successfully conducted a coal and coke business in the city of Detroit. He won a high standing of credit and personal reputation. The name "Kuschewski"

was locally valuable in the coal and coke business. Some years ago he retired from the business, turned it over to his children, and has since been engaged in real estate activities and in looking after his personal investments.. The children formed a family corporation under the name of Kuschewski Bros., Inc. The sons, defendants Otto and Hugo, were the active managers. The corporation conducted a yard at 6013 Buchanan street. It owned another yard at 5970 West Warren avenue, which it rented to the Mac's Coal Company, of which defendant McQueen was the manager. On July 1, 1925, the corporation sold its Buchanan street yard and business to plaintiffs for $55,000. The sale included the good will of the business, the right to use the name "Kuschewski Brothers," an agreement that the corporation should not engage in the business in or within 50 miles of the city of Detroit, and an undertaking to procure a similar agreement from all its stockholders. All the stockholders, including Otto and Hugo, executed an agreement "not to enter into or carry on any coal or coke business, wholesale or retail, either directly or indirectly, in the city of Detroit, Michigan, or within a radius of 50 miles of the city limits of said city of Detroit." John Kuschewski and McQueen were not stockholders nor parties to the contract. On July 2, 1925, plaintiffs filed an assumed name certificate to do business as Kuschewski Brothers, and since then have been conducting the Buchanan street yard under that name and as Kuschewski Brothers Coal company.

On November 4, 1925, the Mac's Coal Company failed, owing Kuschewski Bros., Inc., $2,100 for coal and $300 for rent. Its total debts were $6,000 or $7,000, and it had coal on hand worth about $600 or $700. On December 8, 1925, McQueen started a coal and coke business at the Warren avenue yard under the name of John Kuschewski.

This bill was filed March 11, 1926, to restrain the defendants, and each of them, from conducting the present "John Kuschewski" or any other coal and coke business under the Kuschewski name within the city of Detroit and a 50-mile radius, on the claim that Otto and Hugo were interested in the Warren avenue yard and the theory of conspiracy by all the defendants to aid Otto and Hugo breach their agreement with plaintiffs, and also on the ground of unfair competition. Plaintiffs had decree as prayed with award of $1,000 damages.

Defendant John Kuschewski knew the conditions of the sale of the Buchanan street yard to plaintiffs. He had known McQueen since his connection with the Mac's Coal Company in December, 1924, knew he was manager of that concern and that it had failed. He testified that he made no inquiries as to McQueen's standing or resources, took no bond or security against loss, did not consult Otto or Hugo, gave McQueen permission to conduct a coal and coke business under his name in consideration of McQueen's furnishing coal to one of his houses, and had no interest in the business. McQueen said he was to furnish coal to two houses and it was worth $500 per year. No written agreement was made. John authorized McQueen to open a bank account in his name and empowered him to draw checks against it. McQueen drew all the checks. A few weeks before the hearing, John told one of the plaintiffs that the business was his own.

When the Mac's Coal Company failed on November 4, 1925, Otto and Hugo impounded its stock of coal. They had gone into the real estate business and had an office with one Speyer a few blocks from the Warren avenue yard, where they kept the books of their corporation and made collections on the old coal accounts. On November 25, 1925, Otto wrote the post office directing that all mail for Kuschewski Bros., Inc., him-

self, Hugo, Kuschewski Bros., and "all mail addressed other than Kuschewski Bros. Coal Co." be sent to the real estate office. Otto and Hugo testified that they wanted to sell the Warren avenue yard, would not give a lease, rented it to McQueen from day to day at $8 per day, collected the rent each day, did not know he was to use their father's name until he took posses-·sion, and they were not interested in the business. McQueen sold the Mac's Coal Company stock of coal and paid the money to Kuschewski Bros., Inc. Before or after McQueen took charge, Otto and Hugo moved the corporation books to the Warren avenue yard, and, after he began operations, they spent considerable time at the yard, using it as headquarters for collection of the coal bills and transacting some real estate matters there while still maintaining the other office. McQueen knew that plaintiffs had purchased the coal business of Kuschewski Bros., Inc., and were using the name. It is a fair inference that he knew of the restrictive agreement.

McQueen did not file an assumed name certificate to do business as John Kuschewski until March 30, 1926, after this suit was commenced.

The situation is not opaque. A man with the acumen and standing of John Kuschewski, who had great pride in his reputation, would hardly permit the use of his name, in a day to day business, by a virtual stranger who had recently failed in the same vocation at the same place, without retaining any control over operations, without written agreement or security, and subject himself to the risk of serious financial liability and loss of personal prestige, for $500 per year. He might do it in his sons' affairs. Otto and Hugo were interested in maintaining the yard in operation, at least until they could sell. Their conduct and the facts plainly indicate that the yard was reopened under plan and control of Otto and Hugo, whatever may have been the technical ownership, and that they used

McQueen's services and their father's name to circumvent their agreement with plaintiffs.    Upon this issue, the plaintiffs are entitled to relief.

The situation also offers a sound basis for a claim of unfair competition under our decisions, some of which are:    *Penberthy Injector Co.* v. *Lee,* 120 Mich. 174; *Finney's Orchestra* v. *Finney's Famous Orchestra,* 161 Mich. 289 (28 L. R. A. [N. S.] 458) ; *People's Outfitting Co.* v. *People's Outlet Co.,* 170 Mich. 398; *McGarry* v. *Milne,* 226 Mich. 566.

When McQueen resumed operations, he caused an advertisement to be inserted in the telephone directory under the name "John Kuschewski Coal Co."    Signs were painted on the buildings with the words "coal and coke" in large type, "John" in four-inch letters and "Kuschewski" in four-foot letters.    The Warren avenue yard had been operated by Kuschewski Bros., Inc., until taken over by the Mac's Coal Company after December, 1924.    Otto and Hugo had been in charge. The manner in which the signs were painted and the presence of Otto and Hugo at the yard could reasonably have led the public to believe that Kuschewski Brothers were conducting the business.    And the statement in 38 Cyc. p. 816 is apt:

"An attempt to purchase, or otherwise acquire, the right to use a personal or family name, apart from a purchase of the business, and its good-will, in which the name has become valuable, is almost conclusive evidence of fraud and unfair competition."

However, there is to be considered the further elements of unfair competition, deception, and confusion of the public.

"In order to make out a case of unfair competition, it is not necessary to show that any person has been actually deceived by defendant's conduct and led to purchase his goods in the belief that they are the goods of plaintiff or to deal with defendant thinking he was dealing with plaintiff.    It is sufficient to show that

such deception will be the natural and probable result of defendant's acts. *But either actual or probable deception and confusion must be shown, for if there is no probability of deception, there is no unfair competition. In close cases, where the deceptive tendency is not clear, equity will withhold its hand until actual deception has resulted.*" 38 Cyc. p. 773.

"Unfair competition is always a question of fact. The question to be determined in every case is whether or not, as a matter of fact, the name or mark used by defendant has previously come to indicate and designate plaintiff's goods, or, to state it another way, whether defendant, as a matter of fact, is by his conduct passing off his goods as plaintiff's goods, or his business as plaintiff's business. The universal test question is whether the public is likely to be deceived." 38 Cyc. p. 779.

There was some showing of confusion of mail deliveries and of a few cars of coal consigned to John Kuschewski having been delivered to plaintiffs. But confusion in mail had occurred ever since plaintiffs' purchase. There was no competent evidence that the public or any customers had been misled or confused into dealing with defendants in the belief that the business was plaintiffs'.

The Buchanan street and Warren avenue yards were a mile apart. Plaintiffs had never operated at Warren avenue. It can hardly be said that the use of the John Kuschewski name and the conduct of defendants naturally and probably led the public to believe that the Warren avenue business belonged to plaintiffs or "Kuschewski Brothers," although they could have had that tendency. If they did so deceive, the fact would be easily capable of proof. Plaintiffs testified that their business decreased one-half on account of McQueen's use of the name. They gave no figures and produced no books to substantiate the statement. The hearing was commenced on June 3, 1926. They had six months to determine the effect of defendants'

operations and to discover cases of confusion.    They claimed there were many.    They attempted to detail a few instances from hearsay, most of them from reports of their employees.    Such evidence was not competent.    26 R. C. L. p. 898.    They did not produce the employees nor any customers.    They attempted competent proof of only one claimed case of confusion and that was satisfactorily explained.    The failure to show confusion and deception of the public and consequent injury to plaintiffs precludes recovery on the ground of unfair competition.

Without setting up the details, it is sufficient to say that the record does not contain sufficient facts to now measure plaintiffs' damages for violation of the restrictive agreement.    See *Daniels* v. *Brodie*, 54 Ark. 216 (15 S. W. 467) ; *Kezeli* v. *River Rouge Lodge, I. O. O. F.*, 195 Mich. 181.

These rulings necessitate a substantial modification of the decree and the settlement of a new one by this court.    The plaintiffs are entitled to injunctive relief against all the defendants; to restrain Otto and Hugo Kuschewski from violating their agreement with plaintiffs; to restrain John Kuschewski and McQueen from continuing or engaging in the coal and coke business with Otto and/or Hugo in violation of such agreement, and from continuing or engaging in such business on any premises within the prohibited area in which Otto or Hugo may have any control or interest, personally or as stockholder or otherwise.    The decree may also be without prejudice to plaintiffs' right of future action for unfair competition and may provide reference for assessment of plaintiffs' damages in the present action.    Plaintiffs will have costs in the circuit court.    Neither party will have costs in this court.

NORTH, FELLOWS, WIEST, CLARK, McDONALD, POTTER, and SHARPE, JJ., concurred.