**MARION LABORATORIES, INC.,**
Plaintiff,

v.

**MICHIGAN PHARMACAL CORP.,**
Defendant.

**Civ. A. No. 33431.**

United States District Court,
E. D. Michigan, S. D.

March 10, 1972.

Daniel G. Cullen, Bernard J. Cantor, Cullen, Settle, Sloman & Cantor, Detroit, Mich., Raymond D. McMurray, New York City, for plaintiff.

C. William Garratt, Jaffe, Snider, Raitt, Garratt & Heuer, Detroit, Mich., for defendant.

## OPINION

RALPH M. FREEMAN, Chief Judge.

In this diversity action, plaintiff, a Delaware corporation, seeks injunctive relief against defendant, a Michigan corporation, for alleged acts of unfair competition. Plaintiff is a manufacturer and distributor of pharmaceutical products. One of its trademarked products, "Pavabid", is marketed in a brown and clear capsule containing 150 mg. of papaverine hydrochloride in a sustained release formulation. Defendant distributes pharmaceutical products under its own label, including a brown and clear 150 mg. papaverine hydrochloride sustained release capsule. It is the similarity in the color of these two capsules which gives rise to the present action.

At the close of the plaintiff's case, defendant made a motion to dismiss, and at the close of the trial, filed a brief in support of its motion, claiming that the court lacked subject matter jurisdiction, that the statute of limitations had run,

that plaintiff had failed to prove certain elements establishing a prima facie case, and that the Supreme Court cases, Sears, Roebuck & Co. v. Stiffel Company, 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed. 2d 661 (1964) and Compco Corporation v. Day-Brite Lighting, Inc., 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669 (1964), required dismissal of this case. In addition to the defenses asserted in the motion to dismiss, defendant contended that plaintiff lacked capacity to sue.

■ The subject matter jurisdiction of this court is based upon diversity of citizenship between the parties and upon the assertion that the amount in controversy is in excess of $10,000. The remedy sought in this action is an injunction against the alleged unfair competition of the defendant. The defendant claims that the amount in controversy should be determined in this type of action by computing plaintiff's lost profits and injury to good will. In support of this contention, defendant cites Seaboard Finance Company v. Martin, 244 F.2d 329 (5th Cir. 1957) and Indian Territory Oil & Gas Company v. Indian Territory Illuminating Oil Company, 95 F.2d 711 (10th Cir. 1938). Neither of these cases supports defendant's position, but nevertheless, they do state the general rule that, in actions to enjoin unfair competition, the amount in controversy is the value of the right to be protected. See 1 Moore's Federal Practice, ¶ 0.96[2], p. 870 (2nd ed., 1970). In Wisconsin Electric Company v. Dumore Company, 35 F.2d 555 (6th Cir. 1929), a case involving alleged acts of unfair competition and trademark infringement, the Sixth Circuit said:

"We think jurisdiction depends, not alone upon the pecuniary damage resulting from the acts complained of, but also upon the value of the rights which plaintiff seeks to have protected."

See, also, John B. Kelly, Inc. v. Lehigh Nav. Coal Company, 151 F.2d 743 (3d Cir. 1945), cert. denied 327 U.S. 779, 66 S.Ct. 530, 90 L.Ed. 1007. The value of the property right can be determined by the amount of advertising expense of the product. Ross-Whitney Corporation v. Smith Kline & French Laboratories, 207 F.2d 190 (9th Cir. 1953). This rationale would also extend to include sales volume as an indication of the value of the property right. At the trial of this case, Mr. Sperry, Vice-President of Sales in Marion Laboratories, testified that Pavabid accounted for $18,000,000 in sales or more than one-half of the Company's sales in the 1970–1971 fiscal year. In Michigan alone, sales of Pavabid amounted to $1.2 million. In addition, he testified that Marion spent $2.5 million during the same time period for advertising of Pavabid. From these facts, the court concludes that the amount in controversy clearly exceeds $10,000.

Defendant has also challenged plaintiff's capacity to sue. Rule 17(b) of the Federal Rules of Civil Procedure provides:

The capacity of a corporation to sue or be sued shall be determined by the law under which it was organized. In all other cases capacity to sue or be sued shall be determined by the law of the state in which the district court is held . . .

Plaintiff is a Delaware corporation. Defendant has not asserted that plaintiff lacks capacity to sue under Delaware law. Its argument is that plaintiff could not sue in a Michigan state court, and, therefore, it should not be able to sue in a federal court sitting in Michigan.

In Woods v. Interstate Realty Company, 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524 (1949), the Supreme Court held that since the plaintiff could not sue under Mississippi law in a Mississippi state court for its failure to register under the law of that state, the federal courts would not retain jurisdiction over the case. Thus, even though Marion may be a duly registered and organized corporation under the law of Delaware, a Michigan statute prohibiting it from suing in a Michigan state court would

bar the bringing of a suit in this court. 3A J. Moore, Federal Practice, ¶ 17.21, p. 773 (2nd ed., 1970).

█ Defendant in its brief claims that plaintiff's failure to make an application to do business and to pay annual fees suspends plaintiff's corporate powers, including the right to sue in Michigan courts, and relies on M.S.A. § 21.87, M.C.L.A. § 450.87, for this contention. Plaintiff claims that it is not doing business within the state and that the statute is not applicable to it. Nevertheless, even if this statute is applicable, § 21.87 only provides that a corporation "shall not maintain any action or suit in any court of this state *upon any contract* entered into during the time of such default". (Emphasis added) Since plaintiff's claim is based upon an alleged tort, and not upon a contract, the statute would not bar this suit. See Gamalski Hardware v. Sheriff, 298 Mich. 662, 668, 299 N.W. 757 (1941).

█ Defendant also asserts that this action is barred by the statute of limitations. As mentioned above, this is a tort action. The applicable period of limitation within which tort actions must be brought is three years. M.S.A. § 27A.5805(7), M.C.L.A. § 600.5805(7). Defendant argues that the period of limitations be computed from the first date on which Marion learned of the existence of defendant's brown and clear papaverine hydrochloride capsule. However, the alleged harm is one of a continuing nature. Sales of defendant's brown and clear capsules continue to be made.

The rule with respect to continuing torts, such as the one here involved, is

> Where there are continuing wrongful acts within the period limited by the statute, . . . recovery is not barred. Defnet v. City of Detroit, 327 Mich. 254, 258, 41 N.W.2d 539, 541 (1950).

The period of limitations commences to run from the date of the last injury. Since the alleged injury continued to occur up until the time of trial, the statute of limitations had not run as to this action. 20 Michigan Law and Practice Encyclopedia, Statute of Limitations, § 33.

The court must determine next whether plaintiff's claim of unfair competition is cognizable by the court. As pointed out in defendant's briefs, in two recent cases, Sears, Roebuck & Co. v. Stiffel Company, 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964), and Compco Corporation v. Day-Brite Lighting, Inc., 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669 (1964), the Supreme Court has limited the extent to which state unfair competition laws can protect unpatented products. In *Sears*, the Court said

> Just as a State cannot encroach upon the federal patent laws directly, it cannot, under some other law, such as that forbidding unfair competition, give protection of a kind that clashes with the objectives of the federal patent laws. 376 U.S. p. 231, 84 S.Ct. p. 789.

Thus, initially, this court must determine whether the relief requested by the plaintiff under Michigan law of unfair competition, i. e., to enjoin defendant from marketing its product in a brown and clear capsule, will infringe upon the federal scheme for the granting of patents.

In *Sears*, the plaintiff, as manufacturer of a pole lamp, sued Sears for patent infringement and for unfair competition under Illinois law. Sears had substantially copied plaintiff's product and sold the lamp in its stores at a cheaper price. Plaintiff's patent on the lamp was found to be invalid, but its claim of unfair competition was upheld. Under Illinois law of unfair competition, the law applicable to plaintiff's claim, plaintiff only needed to show "a likelihood of confusion as to the source of the products" to prevail. The Supreme Court, however, viewed the finding of unfair competition and the resulting injunction against Sears to refrain from dealing in lamps similar to plaintiff's as conflicting with the federal power to grant or deny a

patent under Article I, § 8, Cl. 8. The Court said

> To allow a State by use of its law of unfair competition to prevent the copying of an article which represents too slight an advance to be patented would be to permit the State to block off from the public something which federal law has said belongs to the public . . . [A] State may not, when the article is unpatented and uncopyrighted, prohibit the copying of the article itself. p. 231, 84 S.Ct. p. 789.

The Court, in Sears, went on to say, however, that a State, in appropriate circumstances, may require goods to be labeled or that other precautionary steps be taken to prevent customers from being misled as to the source of goods; and that it may also protect the use of trademarks, labels or distinctive dress in packaging to prevent the public from being misled.

In Compco Corporation v. Day-Brite Lighting, Inc., *supra*, the reflector on a lighting fixture, covered by a design patent, was copied by the defendant. Plaintiff's patent was held invalid, but the trial court under the unfair competition law of Illinois enjoined defendant "from unfairly competing with plaintiff by the sale or attempted sale of reflectors" that substantially resembled plaintiff's. Again, the Supreme Court found such a finding to be contrary to federal policy governing patents. But the Court made certain exceptions to its prohibition of state interference through the law of unfair competition, and said that, if the state has valid statutory or decisional laws requiring a copier to label or to take other precautions to prevent confusion of customers as to the source of the goods, the state may impose liability on the copier, but cannot prohibit the copying and selling of the article itself. The Court also mentioned that the state can impose liability upon those who palm off their product as the original. In connection with the proof of wrongful acts, such as palming off or failure to properly label, the Court recognized that consideration of the traditional elements of unfair competition cases may be relevant, for example, secondary meaning of plaintiff's product, confusion among customers, and the non-functional nature of the imitated feature, but that these factors in and of themselves do not constitute a tort on the part of a copier.

█ Thus, two areas remain for the operation of state unfair competition laws, viz., claims of palming off and certain claims for the protection of non-functional features *if* the state has a policy requiring the copier to take precautions to prevent confusion as to his product's source.

█ Plaintiff has alleged palming off, which clearly remains as a claim upon which relief can be granted. Furthermore, plaintiff has alleged unfair competition based upon secondary meaning of the product and confusion among customers as to the source of brown and clear capsules. It is this latter claim that the defendant asserts is barred by the Sears and Compco cases.

In the case at bar, the article of commerce involved is a brown and clear 150 mg. papaverine hydrochloride sustained release capsule. Plaintiff admits, that having no patent on this product, it could not obtain, under the holding in Sears, an injunction forbidding the defendant from manufacturing an identical product, i. e., a 150 mg. papaverine hydrochloride sustained release capsule. Nevertheless, plaintiff has requested that the color of its capsule, an element of its trade dress, be protected from copying by the defendant in order to prevent misleading of the public as to the source of manufacture of this medication. As previously stated, trade dress is an area in which the states can continue to impose liability under valid statutory or decisional laws of unfair competition.

Moreover, the feature which plaintiff seeks to protect is non-functional. The capsule is made of a gelatin that can take on any hue or any degree of trans-

parency or opaqueness. Plaintiff is not asking that the defendant choose a different color for the drug itself, but only for the gelatin capsule that contains the drug compound. It remains to be determined, however, whether applicable state law, either decisional or statutory, prohibits defendant's alleged misconduct.

■ In this diversity case, the court must apply substantive state law. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188. Although plaintiff and defendant sell their products in several of the same states, including New York and Michigan, plaintiff has asserted its right to relief exclusively under Michigan law of unfair competition. Thus, this court must determine initially whether, under Michigan law, there is a policy to protect the trade dress of drugs by requiring "those who make and sell copies . . . to take precautions to identify their products as their own, . . ." *Compco, supra,* 376 U.S. p. 238, 84 S.Ct. p. 782.

Decisions of Michigan courts involving claims of unfair competition have been limited almost exclusively to the protection of names of corporations, buildings, and other businesses. These decisions state the Michigan law of unfair competition as follows.

"Unfair competition ordinarily consists in the simulation by one person, for the purpose of deceiving the public, of the name, symbols, or devices employed by a business rival, or the substitution of the goods or wares of one person for those of another, thus falsely inducing the purchase of his wares and thereby obtaining for himself the benefits properly belonging to his competitor. The rule is generally recognized that no one shall by imitation or unfair device induce the public to believe that the goods he offers for sale are the goods of another, and thereby appropriate to himself the value of the reputation which the other has acquired for his own product or merchandise." Schwannecke v. Genesee Coal & Ice Co., 262 Mich. 624, 247 N.W. 761 (1933); see also, Peninsular

Stove Co. v. Augst, 288 Mich. 465, 470, 285 N.W. 24 (1939), and Carbonated Beverages, Inc. v. Wisko, 297 Mich. 80, 83, 297 N.W. 79 (1941).

In *Carbonated Beverages, supra,* plaintiff sought to protect the label and name of its product, "Sweet Sixteen", from imitation by the defendant. The court denied relief because actual deception was not shown, but also stated

. . . proof of actual deception is not necessary to establish unfair competition, it being sufficient if it appears that deception will be the natural and probable consequence of defendants' acts. Weisman v. Kuschewski, 243 Mich. 223 [219 N.W. 937]

In Tas-T-Nut Company v. Variety Nut & Date Company, 245 F.2d 3 (6th Cir. 1957), the court found that the plaintiff was entitled to protection against the defendant's use of a package closely simulating the design of plaintiff's package in color and printing format. In that case, the court held that Michigan law was controlling. There were no Michigan decisions, however, on the issue presented to the court. Nevertheless, the court found that the "law of Michigan is consistent with the general law of unfair competition as reflected in the authorities cited". Traditional theories of unfair competition were applied to the case and relief was granted. As the court in K-S-H Plastics, Inc. v. Carolite, Inc., 408 F.2d 54 (9th Cir. 1969) noted, "state and federal courts frequently borrow decisions from one another and from the entire body of law on unfair competition". See also, Hygienic Specialties Co. v. H. G. Salzman, Inc., 302 F.2d 614 (2nd Cir. 1962). Other than *Carbonated Beverages* and *Tas-T-Nut, supra,* there have been no Michigan cases dealing with labels or trade dress. Nevertheless, it is clear that Michigan follows the general principles of unfair competition. See Clipper Belt Lacer Company v. Detroit Belt Lacer Co., 223 Mich. 399, 407, 194 N.W. 125 (1923).

In addition, the Michigan statutes do express the state's concern with the la-

beling and packaging of drugs. See M. S.A. § 14.781 and M.S.A. § 14.784, M.C.L.A. §§ 335.1, 335.4.

■ The State of Michigan has expressed, through its decisional and statutory law, that packaging must not mislead the customer. Thus, this court finds that plaintiff has alleged a claim that remains cognizable under existing Michigan law of unfair competition despite the *Sears* and *Compco* decisions.

The plaintiff began manufacturing the product in question, a 150 mg. papaverine hydrochloride sustained release capsule, in 1962. Papaverine hydrochloride is available only on prescription and is used as a vasodilator to allow blood to flow through blood vessels constricted by disease. The drug has been in existence for many years. No one, including plaintiff, claims the right to produce the drug exclusively.

Originally, the drug was only available by tablet or injection, requiring it to be administered about every two hours. Because of the inconvenience of the medication schedule, the drug fell into disuse until plaintiff hit upon the idea of making the drug up in a sustained release form, permitting the dosage schedule to be reduced to one capsule every 8–12 hours. The capsule itself is and has been purchased from Eli Lilly & Co. At first, the drug was manufactured and placed in the capsule by Nesco Corporation. Marion now manufactures the drug and fills the capsules.

When Marion decided to distribute such a product, it attempted to select a distinctive color and shape for the medication. Plaintiff introduced a color wheel provided by Eli Lilly & Co. to illustrate the color combinations available for capsules from which it appears that as many as 12,000 color combinations are available. Marion selected a *brown and clear* capsule in which to sell its sustained release formulation and spent large sums of money promoting this new product.

Initially, the Marion capsule had no markings of any kind on it. But, in June, 1967, plaintiff Marion began imprinting "Marion 1555" on each half of its capsules, allegedly for the purpose of distinguishing plaintiff's brown and clear capsule from defendant's. It appears that defendant Michigan Pharmacal was distributing its similar product by at least March, 1967, although no definite date for the entry of the defendant into the market has been given.

Other companies had also begun to copy the sustained release formulation. In 1971, there were 30 to 40 companies distributing brown and clear, sustained release, papaverine hydrochloride capsules. In addition, some companies make the formulation in other colors. At any rate, plaintiff claims that the imprinting on its capsule failed to eliminate the confusion between plaintiff's and defendant's products, and for that reason, plaintiff instituted this suit.

Plaintiff's suit is based on two theories of the law of unfair competition: (1) that the color of plaintiff's product has gained a secondary meaning among pharmacists and that confusion may result on the part of the patient consumer as to the source of his medication; and (2) that defendant has used the similarity of its product to palm it off as plaintiff's product.

Plaintiff's first contention is that it is an act of unfair competition to copy a non-functional feature of a product when the feature has acquired a secondary meaning among consumers, thus causing confusion among buyers as to the source of the product. To recover under this theory

> "The plaintiff must meet the burden of proving by a fair preponderance of the evidence, that (1) the non-functional features of his article are so distinctive in design or general appearance as to identify the source of the product; (2) purchasers are induced to buy the product because of the assumed identification of origin; and (3) secondary meaning had already been established when the defendant offered his 'Chinese copy' to

the public." 3 Callman, Unfair Competition, Trademarks & Monopolies, § 77.4(e) (2), (3rd ed.)

Plaintiff introduced a survey conducted in the summer of 1970 to show the secondary meaning attributable to their capsule. Defendant has challenged the relevancy of plaintiff's survey to demonstrate secondary meaning of plaintiff's product; the relevancy of demonstrating secondary meaning among pharmacists as opposed to the patient-consumer; and the failure of plaintiff to show confusion as to the patient-consumer. We do not reach these objections of defendant in view of our disposition of this issue on a more basic reason.

■ In order to sustain a claim of unfair competition, plaintiff must demonstrate that its product had obtained secondary meaning before the defendant entered the market. General Radio Company v. Superior Electric Company, 321 F.2d 857 (3rd Cir. 1963); Katz Drug Company v. Katz, 188 F.2d 696 (8th Cir. 1951); Wisconsin Electric Company v. Dumore Company, 35 F.2d 555 (6th Cir. 1929); Upjohn Co. v. William S. Merrell Chemical Co., 269 F. 209 (6th Cir. 1920). From the facts before this court, it is not possible to ascertain the date of defendant's entry into the market. It was undisputed that plaintiff sent a letter to defendant in March, 1967, objecting to defendant's identical dress. Thus, defendant must have entered the market prior to March, 1967. But plaintiff did not introduce any substantial evidence to establish the element of secondary meaning in 1967 or any time prior thereto. The survey which plaintiff introduced as evidence of secondary meaning only reflected the position of plaintiff's product in 1970, not in 1967. Plaintiff also introduced evidence of its present promotional techniques and expenses; but there was no direct evidence of the type or amount of promotion devoted to Pavabid from 1962, when plaintiff introduced its product, until defendant's entry into the market. Since no secondary meaning was shown

to have attached to plaintiff's product prior to defendant's entry, plaintiff has failed to meet its burden of proof as to its theory of unfair competition based on secondary meaning and confusion.

■ Plaintiff's other ground for relief is based upon alleged palming off of defendant's product for that of the plaintiff's. Proof of palming off alone is sufficient to sustain a charge of unfair competition. In the *Sears* and *Compco* cases, *supra,* the act of palming off was specifically mentioned as an area where the states could continue to impose liability under their unfair competition laws. (376 U.S. at p. 238, 84 S.Ct. 779, 11 L.Ed.2d 669). See also, Warner & Co. v. Eli Lilly & Co., 265 U.S. 526, 44 S.Ct. 615, 68 L.Ed. 1161 (1924).

■ Plaintiff attempted to show actual instances of illegal substitution of defendant's product to substantiate its claim of palming off. Substitution, however,· takes on a special meaning in the pharmaceutical business. It is an illegal act. M.S.A. § 14.757(17) (*l*), M.C.L.A. § 338.1117(*l*). It includes not only the dispensing of a different drug than the one prescribed, but also the dispensing of a different brand of drug than the brand prescribed. M.S.A. § 14.757(1) (u), M.C.L.A. § 338.1101(u). Plaintiff attempted to show that doctors' prescriptions for plaintiff's product had been filled by pharmacists with defendant's product by offering in evidence consent decrees obtained by plaintiff against various pharmacies in the Detroit area. But these consent decrees contained no admission or finding that substitution had occurred. For this reason, these exhibits were not admitted. This was the only evidence proffered by plaintiff to show actual instances of palming off. Thus, plaintiff did not prove that any actual palming off had occurred.

■ Proof of actual palming off is not required, however, if the plaintiff can show that defendant suggested and encouraged the palming off of its prod-

uct. In Upjohn Co. v. Schwartz, 246 F. 2d 254 (2d Cir. 1957), the defendant gave its customers a card containing a list of defendant's products with each of Upjohn's similar products listed in spaces alongside. The court found that these cards were "guides for substitution and that defendant intended such use", and that the course of dealing was unfair competition. See also, Smith, Kline & French Lab. v. Clark & Clark, 157 F.2d 725 (3d Cir. 1946).

Plaintiff introduced evidence that defendant's catalog lists plaintiff's Pavabid as a comparable product to defendant's 150 mg. papaverine hydrochloride capsule. However, the catalog specifically states that references to other companies' products are only made "for your reference and reminder". Only the name "Pavabid" appears in the catalog with no reference to its color or to any price differential.

In addition, plaintiff placed one of defendant's salesmen on the stand and attempted to elicit testimony from him to establish defendant's attempt to induce pharmacists to palm off defendant's product as plaintiff's. The testimony only revealed that a pharmacist had asked the salesman in what color capsule defendant's product was made and that the salesman did not know. He also testified that he saw one pharmacist compare plaintiff's and defendant's products side by side. There was no testimony that the salesman had ever been encouraged by defendant to point out the similarity of the two products. This testimony was insufficient to prove that defendant had encouraged or suggested substitution of its product. Since plaintiff has failed to show instances of actual substitutions of defendant's product for plaintiff's and has failed to show that defendant encouraged substitution, its claim of palming off must fail.

Thus, plaintiff has failed to meet its burden of proof on either of its theories of unfair competition. For these reasons, plaintiff's claim for relief must be denied. An appropriate order may be submitted.