EMPIRE NATIONAL BANK OF
TRAVERSE CITY, Plaintiff,

v.

EMPIRE OF AMERICA FSA a/k/a
Empire Savings FA, Defendant.

No. G82–805 CA7

United States District Court,
W.D. Michigan, S.D.

Feb. 15, 1983.

Price, Heneveld, Huizenga & Cooper by Thomas M. McKinley, Grand Rapids, Mich., for plaintiff.

Varnum, Riddering, Wierengo & Christenson by Richard A. Gaffin and John E. McGarry, Grand Rapids, Mich., for defendant.

## OPINION RE: MOTIONS FOR PRELIMINARY INJUNCTION AND FOR PARTIAL SUMMARY JUDGMENT

HILLMAN, District Judge.

This is a civil action for trademark infringement alleging violations of the Lanham Trademark Act, 15 U.S.C. § 1051 *et seq.*, and violations of the statutory and common laws of Michigan. Plaintiff Empire National Bank of Traverse City (Empire National), has brought this action alleging that defendant Empire of America's (Empire Savings) use of the word "Empire" in connection with financial services constitutes false designation of origin and unfair competition in violation of federal and state laws. Jurisdiction is predicated upon the Trademark Act of 1946, 15 U.S.C. § 1121 and 28 U.S.C. § 1338(a).

Currently before the court are plaintiff's motion for a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure and defendant's motion for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff requests this court to enjoin defendant from using, advertising or displaying "Empire" in connection with defendant's financial services. Defendant seeks a declaration that plaintiff's Michigan Service Mark registration of the word "Empire" is void. For the reasons that follow, plaintiff's motion for preliminary injunction is denied. Furthermore, defendant's motion for partial summary judgment shall, at this time, be denied.

## I. STATEMENT OF THE CASE

Plaintiff Empire National is a national banking association having its principal place of business in Traverse City, Michigan. Plaintiff originally began doing business as a privately owned bank in 1906

under the name "Empire Exchange Bank" in Empire, Michigan. After a number of intermittent changes, plaintiff, in 1961, evolved to its present status by converting to a national banking association, changing its name to "Empire National Bank of Traverse City," and relocating its main office from Empire, Michigan, to Traverse City, Michigan. Traverse City is located approximately 20 miles west of Empire, Michigan.

Traverse City is a well-known resort area located on Lake Michigan's Grand Traverse Bay. Traverse City is located near year-round recreational facilities and substantial oil and gas deposits. Consequently, the Traverse City area is frequented by people from throughout the United States.

As a national banking association, Empire National provides a full range of financial and banking services to its customers. Plaintiff Empire National has branch locations in Kalkaska, Michigan; Empire, Michigan; and Leland, Michigan. Although plaintiff is a national banking association, plaintiff's location of branch offices is governed by the laws of Michigan, which prevent plaintiff from locating branch offices outside of a 25-mile radius of its main office. *See*, 12 U.S.C. § 36(c), with M.C.L.A. § 487.34.

Although plaintiff may locate branch offices only within a 25-mile radius of Traverse City, Michigan, plaintiff participates in a state-wide automatic teller network which permits plaintiff's customers to do their banking throughout Michigan. This electronic transfer network is known as "Magic Line."

Plaintiff Empire National advertises its services through all forms of media. Although its media advertising is directed primarily at the market in the immediate Traverse City area, plaintiff mails newsletters, brochures and other materials to its customers throughout Michigan and the United States.

Defendant "Empire of America FSA" (Empire Savings) is a federally-chartered savings and loan association which resulted from a merger between "Erie Savings Bank" of Buffalo, New York, and "Ameri-can Federal Savings and Loan Association" of Southfield, Michigan. This merger, which was approved by the Federal Home Loan Bank Board (FHLBB), was accomplished on July 30, 1982, and resulted in an association named Empire Savings FA. During 1982, Empire Savings also acquired savings and loan associations in Florida and Texas.

As a Savings and Loan Association, defendant Empire Savings is not subject to the same geographic restrictions as is plaintiff Empire National. However, defendant's branch offices are currently limited to the metropolitan Detroit area in Oakland, Wayne and Macomb Counties. The metropolitan Detroit area is located approximately 130 miles from the Traverse City area.

Defendant Empire Savings advertises its services in various media including radio, television and newspapers. Although defendant alleges that its advertisement is targeted at the Detroit area, defendants advertisements apparently are placed in newspapers having state-wide circulation and on some television stations that are watched state-wide due to cable television networks. In its advertising, defendant refers to itself as the "Big E" in conjunction with its full corporate name.

Plaintiff learned of defendant's use of "Empire" in August of 1982 after reading an advertisement in the *Detroit Free Press* which announced the merger of American Federal Savings & Loan Association of Southfield with the Erie Savings Bank of Buffalo. On August 16, 1982, plaintiff informed defendant that plaintiff considered defendant's use of "Empire" to constitute infringement of its mark "Empire" which was registered with the State of Michigan in June of 1982.

After an exchange of correspondence failed to resolve the dispute between the parties, plaintiff filed the instant complaint on October 7, 1982. Plaintiff's complaint alleges four causes of action. First, that defendant's use of "Empire" constitutes false designation of origin in violation of section 43(a) of the Lanham Act, 15 U.S.C.

§ 1125(a). Second, that defendant's conduct constitutes trademark infringement in violation of the Michigan Trademark Act, M.C.L.A. § 429.31 et seq. Third, that defendant's conduct violates the Michigan Consumer Protection Act, M.C.L.A. § 445.-901 et seq. Fourth, that defendant's conduct amounts to unfair competition in violation of the common law of Michigan.

On December 22, 1982, plaintiff filed the instant motion for a preliminary injunction. On the same day, defendant filed its motion for partial summary judgment seeking to have plaintiff's Michigan registration declared void. On January 21, 1983, a hearing, at which all parties were represented, was held before this court. At the hearing, this court heard oral argument on both plaintiff's and defendant's motions.

## II. PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Both parties to the present action agree that the determining factor as to the propriety of issuing a preliminary injunction in this case is the "likelihood of confusion" which may result from defendant's use of the word "Empire." See, Hindu Incense v. Meadows, 692 F.2d 1048 (6th Cir.1982). This determination governs plaintiff's federal as well as state law claims. See, Weisman v. Kuschewski, 243 Mich. 223, 219 N.W. 937 (1928).

The legal standard governing the issuance of a preliminary injunction in trademark actions is clear. The movant must show (a) irreparable harm, and (b) either (1) a likelihood of success on the merits, or (2) sufficiently serious questions going to the merits to make them fair ground for litigation and a balance of hardships tipping decidedly toward the moving party. Frisch's Restaurants, Inc. v. Elby's Big Boy, 670 F.2d 642 (6th Cir.1982).

Since the critical issue in the present case surrounds the likelihood of the public confusing the origin of the word Empire, plaintiff's likelihood of success on the merits is dependent upon Empire National demonstrating that there is a likelihood of confusion among consumers regarding the word

in question. The Court of Appeals for the Sixth Circuit has instructed that eight factors be considered to determine whether there is a likelihood of confusion among consumers. Those factors are as follows:

(1) strength of the mark;
(2) relatedness of the goods;
(3) similarity of the marks;
(4) evidence of actual confusion;
(5) marketing channels used;
(6) likely degree of purchaser care;
(7) intent in selecting the mark;
(8) likelihood of expansion of the product lines.

Id. at 648 (citation omitted).

In the present case, the parties agree, for the purposes of the instant motions, that the parties provide similar services and that the mark "Empire" is similar. Therefore, this court need only evaluate the remaining factors listed in Frisch's, supra, to determine the likelihood of confusion in the present case.

### A. Strength of Plaintiff's Mark.

The protection afforded a trademark depends on the "strength" or "weakness" of the mark. Stork Restaurant v. Sahati, 166 F.2d 348 (9th Cir.1948). A strong mark is one which is generally fictitious, arbitrary or fanciful and is usually inherently distinctive. Consequently, a strong mark is entitled to wide protection. See, Soweco, Inc. v. Shell Oil Co., 617 F.2d 1178 (5th Cir.1980). A weak mark is one which is generally descriptive of a product and is only protected when secondary meaning has been shown to have attached to the mark. Miss Universe, Inc. v. Patricelli, 408 F.2d 506 (2d Cir.1969). Additionally, a mark may be "suggestive" in which case, the mark is seldom if ever afforded trademark protection. See, Soweco, supra. A suggestive mark usually involves a generic term which communicates information concerning the nature or class of a service. America Heritage Life Insurance Co. v. Heritage Life Insurance Co., 494 F.2d 3 (5th Cir.1974).

Plaintiff contends that since the word Empire standing alone does not describe

financial services, its use of Empire makes the mark a strong mark.

■ I find that plaintiff's use of Empire is not so distinctive as to be characterized as a strong mark in its application to financial services. Initially, I note that a primary meaning of the word Empire involves financial transactions. Webster's *New World Dictionary* defines empire as an extensive social or economic organization under the control of a single person, family or corporation. 1970 Ed. Thus, it appears that the word Empire is neither fanciful or arbitrary standing alone or in its application to banking services.

The weakness of the mark Empire is manifest in a report of a search which was conducted by defendant of businesses using the word Empire. That search establishes that over 3,000 entities in the United States use Empire as part of a mark or name. Among these are over 100 financial institutions using names such as Empire Bank, Empire National Bank and Empire Savings and Loan Association.

Additionally, it appears that the banking business is one in which a bank's name has few inherent distinctive properties. Indeed, under federal law, all national banking associations must have the word national in their names. 12 U.S.C. § 22. The fact that financial institutions use similar names was specifically recognized by the Michigan Supreme Court when it stated that a greater latitude is allowed to banks and insurance companies in choosing corporate names than in the case of other corporations. *Central Mutual Auto Ins. Co. v. Central Mutual Ins. Co.,* 275 Mich. 554, 560, 267 N.W. 733, 735 (1936); *see Sun Banks of Florida v. Sun Federal Savings and Loan,* 651 F.2d 311 (5th Cir.1981). Based on the foregoing, I find the word Empire to be a weak mark when used in connection with financial services.

In support of its contention that "Empire" constitutes a strong mark, plaintiff relies heavily upon the fact that it has registered "Empire" as a mark with the Michigan Department of State. Additionally, plaintiff has cited this court to *Frisch's, supra,* where the Sixth Circuit recognized that a registered mark is entitled to protection through the state in which that mark is registered. *Id.* at 649.

In addition, I note that the Sixth Circuit's statement in *Frisch's, supra,* was based on holdings of the Ohio Supreme Court which found that registration under Ohio law entitles the owner of a mark to state-wide protection. More specifically, the Sixth Circuit based its statement on the doctrine which entitles the owner of a mark to protection through the entire territory to which a mark holder may reasonably be expected to expand. *Id.* at 649, citing *Socony-Vacuum Oil Co. v. Oil City Refiners, Inc.,* 136 F.2d 470 (6th Cir.), *cert. denied* 320 U.S. 798, 64 S.Ct. 368, 88 L.Ed. 482 (1943).

The factors present in *Frisch's, supra,* are markedly absent in the present case. First, the court has been provided with no Michigan court decision holding that registration of a mark with the Michigan Secretary of State automatically entitles a holder to state-wide protection. Indeed, Michigan courts have consistently held that trademarks only grow out of use and cover the area in which they are used. *See, Interstate Brands Corp. v. Way Baking Co.,* 403 Mich. 479, 270 N.W.2d 103 (1978). Additionally, branch banking laws specifically proscribe plaintiff from any expansion outside its current territory. I find the weak nature of the purported mark Empire and the two distinct markets in which the parties operated not only establishes the weakness of plaintiff's mark, but also strongly militates against a likelihood of confusing the public.

### B. *Secondary Meaning.*

■ Although the mark Empire is inherently a weak mark, it may be afforded trademark protection if it has acquired a "secondary meaning." That is, because of extensive use and advertising, the public has come to identify a particular product or service with a particular source. *See, Union Carbide v. Ever Ready, Inc.,* 531 F.2d 366 (7th Cir.), *cert. denied* 429 U.S. 830, 97 S.Ct. 91, 50 L.Ed.2d 94 (1976).

Plaintiff contends that a secondary meaning has attached to the word "Empire." In

support of its position, plaintiff points to its general advertising, its mailing of advertisements, and its participation in an automatic teller network. I find that plaintiff has not established that a secondary meaning has attached to the word "Empire."

■ First, secondary meaning attaches where the public at large has come to regard a particular mark as identifying a single source. *See, Ever Ready, supra.* In the present case, the record before the court shows that plaintiff's advertisements and mailings are directed primarily at its own customers, not at the public at large. Additionally, plaintiff's participation in automatic transfer network cannot be considered as establishing secondary meaning since that service does not even contain the word Empire. More importantly, I find that extensive third party use of the word empire, as shown by defendant, strongly suggests that no secondary meaning has attached to the word Empire.

### III. ACTUAL CONFUSION

■ In support of its motion, plaintiff has submitted affidavits which attest to a number of occasions in which persons either inquired as to whether the instant parties were the same entity, or whether plaintiff was part of the merger announced in the *Detroit Free Press.* On at least one occasion, plaintiff's affidavits state that one of defendant's customers attempted to transfer funds at one of plaintiff's offices. Although I find these affidavits to establish at least some evidence of actual confusion, I note that occasional instances of confusion with regard to banking services has generally been held to be non-probative. *See, Detroit Savings Bank v. Highland Park State Bank of Detroit,* 201 Mich. 601, 167 N.W. 895 (1918). *See also, First Southern Federal Savings,* 614 F.2d 71 (5th Cir.1980). I find that although plaintiff has shown some evidence of actual confusion, that such evidence is minimal.

### IV. PURCHASER CARE

Plaintiff contends that consumers of banking services are not likely to exercise a high degree of care in selecting a bank. Specifically, plaintiff contends that persons looking for an institution in which to open a checking account or from which persons may wish to obtain a loan cannot be expected to be familiar with the complex corporate relationships in the banking industry. I find plaintiff's contention to be unpersuasive.

■ Although the banking industry is complex, the services provided by banks are not services that are normally subject to impulse buying. *Cf., Frisch's, supra,* at 649. Courts have generally recognized that bank customers exercise a greater degree of care than do customers of other businesses. *Wyoming National Bank of Casper v. Security Bank & Trust Co.,* Wyo., 199 U.S.P.Q. 375 (1977); *Central Mutual Ins. Co., supra,* at 560. Indeed, as earlier mentioned, the record before the court shows that at least one customer in the present case inquired of plaintiff as to plaintiff's participation in the merger involving Empire Savings. Based on the nature of the banking industry and on the evidence before the court, I find that the degree of purchaser care in the banking business does not easily promote a likelihood of confusion.

### V. MARKETING CHANNELS

The record shows that the parties use the same media in advertising their services. However, the channels used by the parties are dissimilar. The record before the court shows that the parties generally advertise their services in distinct market areas. Although defendant has placed advertisements in media that may reach the Traverse City area, the degree of overlapping marketing channels, as presented to the court, appears to be minimal. Nevertheless, I find that there is at least some showing that the marketing channels used by the parties could promote a likelihood of confusion.

### VI. INTENT IN SELECTION OF A MARK

Plaintiff contends that defendant chose the mark Empire in order to derive benefit from the reputation established by plaintiff. In support of its position, plaintiff relies heavily upon the fact that defendant's predecessor, American Federal Savings and

Loan, was fully aware of and had prior dealings with plaintiff. Thus, plaintiff contends that defendant adopted the name Empire in bad faith. I disagree.

Although wrongful intent is not an absolute requirement to a finding of likelihood of confusion, such an intent is strong evidence that confusion will result. Such an intent may be found by an employee's knowledge of a prior use of a particular mark. *Koffler Stores Ltd. v. Shoppers Drug Mart, Inc.,* 434 F.Supp. 697 (E.D. Mich.), *aff'd,* 559 F.2d 1219 (6th Cir.1977). In the instant case, affidavits submitted by defendant show that the decision to change defendant's name to Empire Savings occurred prior to the time that a merger with American Federal Savings was contemplated. Additionally, the record before the court shows that on two occasions defendant either delayed in adopting the name Empire or changed its name to avoid infringing on other banks' trademarks. Furthermore, defendant's search, which was conducted prior to the instant action, for other businesses using the name Empire clearly shows that defendant was concerned with the trademark rights of other businesses. Based on the record before the court, I find no evidence of bad faith on defendant's part in adopting the name Empire.

## VII. EXPANSION OF PRODUCT LINE

The likelihood of the parties' expansion is limited. As noted earlier, plaintiff's market is limited to its present territory. M.C.L.A. § 487.34. Although defendant, as a Savings and Loan Association, is not subject to the same restrictions, the record before me is void of any showing that defendant's normal business expansion will include the Traverse City area. *See, Frisch's, supra,* at 649. Based on the evidence thus far presented to the court, I am unable to find that the parties' normal business expansion may lead to a likelihood of confusion.

## VIII. IRREPARABLE INJURY

For a party to be entitled to a preliminary injunction, the movant must establish that irreparable injury will result in the absence of a preliminary injunction. Plaintiff contends that the likelihood of confusion along with plaintiff's inability to control its own reputation in the present case establishes irreparable injury. *See, James Burrough Limited v. Sign of the Beefeater, Inc.,* 540 F.2d 266 (7th Cir.1976). In the present case, this court's application of the factors listed in *Frisch's, supra,* precludes a finding that plaintiff has established that a likelihood of confusion exists. Additionally, I find that although the protection of a party's business reputation is an important purpose of the trademark law, the distinct geographic markets in which the instant parties do business militates against finding that plaintiff has or will suffer irreparable injury. Therefore, I find that plaintiff has failed to show irreparable injury and that plaintiff's motion for a preliminary injunction should be denied.

## IX. DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendant's motion for summary judgment attacks plaintiff's Michigan registration of the word Empire on two grounds. First, that plaintiff's registration specimens submitted to the Michigan Secretary of State show that plaintiff uses its mark as an unregistrable trade name and not as a service mark as required by the Michigan Trademark Act. M.C.L.A. § 429.32. Second, that plaintiff improperly represented in its trademark application that plaintiff has used "Empire" as a service mark since 1906.

On a motion for summary judgment, the moving party bears the burden of establishing the nonexistence of material facts and that the movant is entitled to a judgment as a matter of law. *Smith v. Hudson,* 600 F.2d 60 (6th Cir.1979). In the present case, the validity of plaintiff's purported service mark will most likely be governed by this court's determination of the nature of the purported service mark. This determination is ultimately a question of fact. *See, Sun Bank, supra.* The parties in the instant case are in direct dispute over this factual matter. In such cases, the Sixth Circuit has consistently stated that summary procedures should be used spar-

ingly. *See, S.J. Groves Co. v. Ohio Turnpike Commission,* 315 F.2d 235 (6th Cir. 1963). In light of the foregoing, I find that defendant has not met its burden of establishing the nonexistence of material fact. Therefore, defendant's motion for partial summary judgment is denied.

### CONCLUSION

In conclusion, I find that in applying the factors listed in *Frisch's,* plaintiff has not shown that defendant's use of "Empire" will result in a likelihood of confusion. Additionally, I find that plaintiff has not shown that it has or will be irreparably injured absent an injunction. Therefore, plaintiff's motion for a preliminary injunction is denied. Finally, I find that there remain disputed issues of material facts surrounding the validity of plaintiff's registered mark. Therefore, defendant's motion for partial summary judgment is denied.